THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNA G. ALBERT, Defendant-Appellant.

Second District   No. 2—91—0376

Opinion filed April 2, 1993.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

After a jury trial, defendant, Donna G. Albert, was convicted of disorderly conduct (Ill. Rev. Stat. 1989, ch. 38, par. 26—1(a)(1)), sentenced to 20 days' incarceration, and ordered to pay a $250 fine, $200 for the cost of representation by the public defender, and court costs. On appeal, defendant argues that (1) she was not proved guilty beyond a reasonable doubt; and (2) the fine, public defender fee, and certain costs were improperly imposed. We affirm the defendant's conviction, modify the sentence in certain respects, and remand for clarification of certain fees assessed defendant.

At the time of the incident on which defendant's conviction is based, she lived with her husband, Mark Albert, at 503 West Washington Street in Harvard, Illinois. On August 1, 1990, Cindy Swanson, who lived directly across the street at 502 West Washington Street, signed a criminal complaint alleging that, at about 1:56 a.m. on August 1, 1990, defendant yelled at the top of her voice from her front lawn in such an unreasonable manner as to disturb Swanson and provoke a breach of the peace. The trial court appointed the public defender to represent defendant after it determined defendant was indigent, and the cause proceeded to trial.

Cindy Swanson testified that, on Tuesday, July 31, 1991, she and her husband went to bed at about 11 p.m. Swanson planned to get up at her normal time of 5:30 a.m. to go to work. At about 2 a.m., Swanson and her husband awoke to the sound of "a lot of yelling and screaming" from across the street. Swanson and her husband got up and looked out the window for about two minutes. Defendant was standing out on the porch at 503 West Washington. Defendant was alone and did not appear in any danger, although Swanson was aware that defendant and Mark Albert had had some sort of confrontation several hours before. Defendant's screaming lasted a total of about 8 to 10 minutes. Swanson could make out some obscenities and the word "help" from time to time; otherwise, she could not distinguish what defendant was saying.

Swanson called the police, whom she saw arrive at defendant's house a short time later. Swanson testified that defendant's screaming disturbed her and made her feel angry, particularly as she had to get up early the next morning to go to work.

Sergeant Dale Langston of the Harvard police department testified that, early in the morning of August 1, 1990, he was dispatched to 503 West Washington Street to deal with a reported disturbance. He did not talk to Cindy Swanson beforehand. When Langston and two other officers arrived at the scene, they found the porch quiet and unoccupied. They knocked on the door. Defendant answered and showed the officers some marks on her wrist. In a loud, hysterical, and apparently intoxicated manner, she explained that her husband had at some earlier time inflicted the harm to her wrists. Mark Albert was in the background and said little. The officers did not arrest him.

The jury found defendant guilty of disorderly conduct. At the sentencing hearing on December 4, 1991, the trial court noted defendant's substantial criminal history and observed that defendant was not "getting the message." The court sentenced defendant to 20 days' incarceration, a $250 fine, a $200 charge for the services of the public defender, and court costs. The court required defendant to pay the fines and costs by June 4, 1992. The costs assessed against defendant include, *inter alia*, a $28 police training fee and two court automation fees, one for $3 and the other for $28.

Defendant moved to reconsider the sentence. At the hearing on the motion, defendant argued that supervision was a more appropriate disposition than incarceration. Defendant's counsel noted defendant's contrition and her enrollment in family counseling. In arguing for supervision, defense counsel stated that "[p]ocketbook punishment fits this crime, or public service, not incarceration." At no time did

defendant argue that she was unable to afford the fine and other charges. The court denied the motion to reconsider, and this court granted defendant leave to file a late notice of appeal.

■■ Defendant argues first that she was not proved guilty beyond a reasonable doubt of disorderly conduct. To obtain a conviction of disorderly conduct, the State was required to prove that defendant knowingly did any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. (Ill. Rev. Stat. 1991, ch. 38, par. 26—1(a)(1).) Defendant asserts that the State proved only that she used vulgar language and that, although this may have caused her neighbors some annoyance, such conduct fell short of causing a breach of the peace. Defendant relies on several opinions holding, in her view, that annoying language in itself cannot amount to disorderly conduct. The State replies that the evidence proved that defendant acted unreasonably inasmuch as she shouted loudly and for several minutes in a residential neighborhood at a time when most people (including the complaining witness) had a reasonable expectation of peace and quiet. The State argues that such disturbing noise is among the types of conduct that a State or municipality may punish under the exercise of its police power. We agree with the State.

When assessing the sufficiency of the evidence of a criminal offense, a court of review must ask whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince any rational trier of fact that the elements of the offense have been proved beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) We believe that the evidence here sufficed to uphold defendant's conviction.

The activity that may constitute disorderly conduct

> "is so varied and contingent upon surrounding circumstances as to almost defy definition. Some of the general classes of conduct which have traditionally been regarded as disorderly are here listed as examples: *the creation or maintenance of loud and raucous noises of all sorts*; unseemly, boisterous [*sic*] or foolish behavior induced by drunkenness *** . In addition, the task of defining disorderly conduct is further complicated by the fact that the type of conduct alone is not determinative, but rather *culpability is equally dependent upon the surrounding circumstances. *** [S]houting, waving and drinking beer may be permissible at the ball park, but not at a funeral*." (Emphasis added.) Ill. Ann. Stat., ch. 38, par. 26—1, Committee Comments, at 149 (Smith-Hurd 1977).

We believe the evidence, viewed most favorably to the prosecution, establishes that defendant was guilty of disorderly conduct. She performed her shouting knowingly and also knew or should have known that such noise likely would disturb people such as the complainant. Defendant's conduct interrupted the complainant's sleep at about 2 a.m. on a workday. Considering the time, manner, and place of defendant's self-expression, the jury was altogether within its prerogative in finding that her behavior was unreasonable. Defendant's conduct is within the types of behavior on which the above-quoted legislative history focuses. This case illustrates perfectly the importance of the surrounding circumstances to a determination that certain conduct is disorderly. As our supreme court has recognized, "[t]he creation and maintenance of loud and raucous noises has always been thought to be within the common-law definition [of disorderly conduct], but it is not the decibel level of the utterance *** alone that is determinative." *City of Chicago v. Wender* (1970), 46 Ill. 2d 20, 23-24.

Although the parties concede that they have found no Illinois cases with facts similar to this case, courts here and elsewhere have long recognized· that the police power includes the ability to protect citizens, particularly in residential areas, from unwanted disturbance resulting from unreasonable noise. See *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 790-91, 105 L. Ed. 661, 675, 109 S. Ct. 2746, 2753 (excessive noise from concert in public park); *Kovacs v. Cooper* (1949), 336 U.S. 77, 93 L. Ed. 513, 69 S. Ct. 448 (disturbance of neighborhood by sound truck); *Noe v. People* (1866), 39 Ill. 96 (disturbance of a single individual, who was home asleep, by firing pistols in the vicinity of her window); *Eanes v. State* (1990), 318 Md. 436, 569 A.2d 604, *cert. denied* (1990), 496 U.S. 938, 110 L. Ed. 2d 665, 110 S. Ct. 3218 (affirming conviction of protester who violated statute outlawing the willful disturbance of any neighborhood by "loud and unseemly noises"); *Blanco v. State* (Tex. Ct. App. 1988), 761 S.W.2d 38 (holding that defendant who played stereo at high volume was properly convicted of disorderly conduct based on unreasonable noise).

Defendant relies on several opinions that reversed convictions of disorderly conduct. We find these cases distinguishable. In *People v. Bradshaw* (1983), 116 Ill. App. 3d 421, the State's evidence showed only that the defendant left a tavern, stood outside, and called the manager a variety of obscene names for 10 or 15 minutes. No bar patrons left as a result. The appellate court concluded that the defendant's conduct was "nothing more than annoying." (*Bradshaw*, 116 Ill. App. 3d at 422.) In *People v. Kellstedt* (1975), 29 Ill. App. 3d 83, the appellate court held that a complaint did not allege disorderly conduct

merely because it alleged that the defendant, while standing on a public street, directed loud, abusive language toward the complainant. The appellate court reasoned that the complaint did not sufficiently allege any danger to the public order from the defendant's conduct. In *People v. Douglas* (1975), 29 Ill. App. 3d 738, the defendant yelled and screamed at police officers who had driven onto his property. Although there was a small group of people nearby, the evidence showed only that some of these people looked in the direction of the incident to satisfy their curiosity. The appellate court held that without any evidence that the defendant's conduct provoked disorder or even had any unusual effect upon the onlookers, the defendant's conviction could not stand.

The situation here is materially different from those presented by the previous cases. Here, defendant did not cause mere annoyance or curiosity among the public, but forcibly disturbed the peace and quiet of people asleep in their homes. We believe that this behavior amounts to disorderly conduct.

■ Defendant next challenges various aspects of her sentence. She argues first that the trial court abused its discretion in imposing a $250 fine and ordering her to reimburse the public defender $200 without any consideration of her ability to pay the fine or reimbursement. We agree with the State that defendant has waived these issues by failing to raise them in her motion to reconsider the sentence. (See *People v. Fort* (1992), 229 Ill. App. 3d 336, 339-40.) Indeed, defendant's counsel told the court that "pocketbook punishment" would be appropriate. The presentence investigation provided the court with evidence of defendant's ability to pay the fine and reimbursement. We decline to consider the propriety of these measures over a year after the trial court imposed them.

However, we do modify the judgment in certain respects, as to which the State concedes error. First, we agree with defendant that she is entitled to a $5 credit against her fine for the one day she was incarcerated prior to trial. (See Ill. Rev. Stat. 1991, ch. 38, par. 110—14; *People v. Hare* (1988), 119 Ill. 2d 441.) Second, we agree that the $28 "court automation fee" is void and must be vacated, as it exceeds what counties are authorized to charge. (Ill. Rev. Stat. 1991, ch. 25, par. 27.3a.) Finally, we agree that the circuit clerk lacked the authority to impose the $28 "police training fee" and that the cause must be remanded for proper imposition of the fines by the *court.* Ill. Rev. Stat. 1991, ch. 38, par. 1005—9—1; *People v. Wisotzke* (1990), 204 Ill. App. 3d 44, 50.

Defendant's conviction of disorderly conduct is affirmed. Defendant is to receive a $5 credit for pretrial incarceration, and the $28 court automation fee is vacated. Finally, the cause is remanded for proper imposition of the "police training fee."

Affirmed as modified and remanded.

WOODWARD and QUETSCH, JJ., concur.