No. 2—10—0061
Opinion filed March 8, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Nos. 09—DT—408 |
| | ) | 09—TR—14643 |
| AMY L. DAMKROGER, | ) ) | 09—TR—14644 |
| Defendant-Appellee | ) ) | |
| | ) | Honorable |
| (Jesse White, Illinois Secretary of State, Contemnor-Appellant). | ) ) | Melissa S. Barnhart, Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice Bowman concurred in the judgment and opinion.

**OPINION**

Jesse White, Illinois Secretary of State (Secretary), appeals from the order of the circuit court holding him in indirect civil contempt of court for failing to issue a monitoring device driving permit (MDDP) to Amy Damkroger following her second arrest in a month for driving under the influence (DUI). For the reasons that follow, we reverse.

BACKGROUND

The facts are undisputed. On June 21, 2009, Damkroger was arrested for DUI in case number 09— DT—361. According to the arresting officer's report, Damkroger submitted to a Breathalyzer

test, which registered a 0.144 blood alcohol concentration (BAC). The report further recited that the officer informed Damkroger at the scene that, as a result of her BAC, her driver's license would be suspended effective August 6, 2009, the forty-sixth day following notice of the suspension. On July 2, 2009, the Secretary mailed Damkroger a notice "confirm[ing] that [her] Illinois driver's license or driving permit and [her] privilege to operate a motor vehicle or to obtain a driver's license in Illinois are suspended effective [August 6, 2009]."

On July 17, less than 30 days after her first DUI arrest, Damkroger was arrested a second time for DUI, in case number 09—DT—408. The report for this arrest states that Damkroger submitted to a Breathalyzer, registered a BAC of 0.118, and consequently was informed that her driver's license would be suspended effective September 1.

On July 24, Damkroger filed a "petition *** to rescind the Statutory Summary Suspension heretofore issued in [case number 09—DT—408]." On August 14, the trial court denied the petition to rescind.

On October 1, Damkroger filed a motion in case number 09—DT—408 for issuance of a MDDP. On October 9, the trial court issued an order directing the Secretary to issue Damkroger a MDDP. The order recited the court's finding that Damkroger was "a first offender as defined in [section 11—500 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—500 (West 2008))]." Section 11—500 defines a "first offender" as, *inter alia*, "any person who has not had a driver's license suspension for violating Section 11—501.1 [(625 ILCS 5/11—501.1 (West 2008))] within 5 years prior to the date of the current offense." 625 ILCS 5/11—500 (West 2008). Section 6—206.1(a)(1) of the Code (625 ILCS 5/6—206.1(a)(1) (West 2008)) provides that a "first offender" is entitled to a MDDP unless, *inter alia*, the "[t]he offender's driver's license is otherwise invalid."

On October 19, the Secretary notified the court that he had no authority to issue Damkroger a MDDP, because she was not a "first offender" as defined in section 11—500 of the Code. On November 12, Damkroger filed a petition for a rule to show cause directing the Secretary to state why he should not be held in contempt of court for not issuing the MDDP. Damkroger argued that, because the suspension in case number 09—DT—361 was not yet in effect when she committed the offense charged in case number 09—DT—408, she did not have "a driver's license suspension *** within 5 years prior to the date of the current offense" (625 ILCS 5/11—500 (West 2008)). The trial court issued the rule and directed the Secretary to respond.

In his response, the Secretary noted that a statutory summary suspension, such as was imposed in case number 09—DT—361, does not take effect until 46 days after notice of the suspension. See 625 ILCS 5/11—501.1(g) (West 2008). The Secretary argued that Damkroger's construction of section 11—500 would mean, absurdly, that a person could commit serial DUIs yet remain a "first offender" as long as the suspension for the first DUI had not yet become effective. The Secretary urged the trial court to follow *People v. Crawford*, 196 Ill. App. 3d 26 (1990), where the appellate court, applying an earlier version of section 11—500, held that the defendant was not a "first offender" for purposes of receiving a judicial driving permit (the predecessor of the MDDP) following his second DUI within two hours. The Secretary noted that, in *Crawford*, the statutory suspension for the first arrest was not yet in effect when the second arrest occurred, yet the *Crawford* court held that the defendant was not a "first offender." See *Crawford*, 196 Ill. App. 3d at 29-30. Under *Crawford*'s logic, the Secretary proposed, Damkroger clearly was not a "first offender" at the time of her offense in case number 09—DT—408. The Secretary urged the court not to hold him in contempt, because he had no authority to issue the MDDP.

The matter was heard on December 15, 2009. Following the arguments of the parties, the trial court adopted Damkroger's reasoning that she was a "first offender" when she was arrested in case number 09—DT— 408, because the statutory suspension in case number 09—DT—361 was not then in effect. The court found *Crawford* inapposite because "since [*Crawford*] we've had the new amendments which have defined what a first offender is." Accordingly, the court found the Secretary in indirect civil contempt for not complying with its order to issue a MDDP to Damkroger. The court gave the Secretary time to purge the contempt and it set the matter for status on January 15, 2010.

On January 15, 2010, the Secretary reaffirmed that he had no power to issue the MDDP. The court imposed a monetary sanction but stayed it pending appeal. The Secretary timely appeals from the order of contempt.

ANALYSIS

The Secretary argues that the contempt judgment was improper because he had no authority to issue Damkroger a MDDP as ordered by the trial court. The Secretary posits two separate rationales. First, the Secretary contends that, when Damkroger was arrested on July 17, 2009, in case number 09—DT—408, she was not a "first offender" as defined by section 11—500 of the Code, because she had "a driver's license suspension for violating section 11—501.1 [(625 ILCS 5/11—501.1 (West 2008))] within 5 years prior [to that arrest]" (625 ILCS 5/11—500 (West 2008)), namely the suspension arising out of case number 09—DT—361. The Secretary contends that for purposes of section 11—500 the suspension in case number 09—DT—361 was imposed on July 2, 2009, when he sent Damkroger official confirmation of the suspension. The Secretary alternatively contends that, even if Damkroger was a "first offender" when she committed the offense charged in

case number 09—DT—408, by the time the trial court issued its October 9, 2009, order directing the Secretary to issue Damkroger a MDDP, her license was "otherwise invalid" (625 ILCS 5/6—206.1(a)(1) (West 2008)), and the order for a MDDP was without legal effect, because the statutory suspension arising from case number 09—DT—361 had taken effect.

We agree, for the reasons stated below, that Damkroger was not a "first offender" when she was arrested in case number 09—DT—408. As this is a sufficient ground for reversing the contempt judgment against the Secretary, we do not address whether Damkroger's license was "otherwise invalid" when the trial court issued its October 9, 2009, MDDP order.

There is no dispute over the standard of review. Where a contempt judgment involves factual determinations, the judgment will not be reversed " 'unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion.' " *In re Marriage of Barile*, 385 Ill. App. 3d 752, 759 (2008) (quoting *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984)). Where, as here, the only contention is over the legal effect of undisputed facts, we review the contempt judgment *de novo*. See *In re Marriage of Kneitz*, 341 Ill. App. 3d 299, 303 (2003).

Additionally, the legal effect of the undisputed facts here involves a question of statutory interpretation, specifically the meaning of terms and phrases in various provisions of the Code. Questions of statutory interpretation are reviewed *de novo*. *In re J.L.*, 236 Ill. 2d 329, 339-40 (2010). The primary objective in construing a statute is to give effect to the intent of the legislature. *Id.* at 339. The most reliable indicator of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning. *Id.*

The statutory construction issues inform the ultimate issue here, which is whether the Secretary was justified in refusing to comply with the trial court's order to issue Damkroger a

MDDP. A party cannot be held in contempt of court for failing to comply with a court order if the party had a "valid excuse" for not complying. *Barile*, 385 Ill. App. 3d at 759. There is excusable noncompliance where the party, through no fault of his own, is unable to comply with the court order. *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 482 (1997). Damkroger does not dispute that, if she was not a "first offender" when she was arrested on July 17, 2009, in case number 09—DT—408, the Secretary had a "valid excuse" for refusing to issue her a MDDP.

We proceed, then, to the underlying issue of statutory interpretation. The springboard for the analysis is section 6—206.1(a) of the Code (625 ILCS 5/6—206.1(a) (West 2008)), which addresses the issuance of MDDPs. We reproduce most of section 6—206.1(a):

"Monitoring Device Driving Permit. Declaration of Policy. It is hereby declared a policy of the State of Illinois that the driver who is impaired by alcohol, other drug or drugs, or intoxicating compound or compounds is a threat to the public safety and welfare. Therefore, to provide a deterrent to such practice, a statutory summary driver's license suspension is appropriate. It is also recognized that driving is a privilege and therefore, that the granting of driving privileges, in a manner consistent with public safety, is warranted during the period of suspension in the form of a [MDDP]. ***

The following procedures shall apply whenever a first offender is arrested for any offense as defined in Section 11—501 [(625 ILCS 5/11—501 (West 2008))] or a similar provision of a local ordinance:

(a) Subsequent to a notification of a statutory summary suspension of driving privileges as provided in Section 11—501.1 [(625 ILCS 5/11—501.1. (West 2008))], the court, after informing the first offender, as defined in Section 11—500 [(625 ILCS 5/11—

500 (West 2008))], of his or her right to a [MDDP] ***, and of the obligations of the MDDP, shall enter an order directing the [Secretary] *** to issue a MDDP to the offender, unless the offender has opted, in writing, not to have a MDDP issued ***. However, the court shall not enter the order directing the Secretary to issue the MDDP, in any instance, if the court finds:

(1) The offender's driver's license is otherwise invalid;

(2) Death or great bodily harm resulted from the arrest for Section 11— 501;

(3) That the offender has been previously convicted of reckless homicide or aggravated driving under the influence involving death; or

(4) That the offender is less than 18 years of age." 625 ILCS 5/6—206.1(a) (West 2008).

Section 6—206.1 specifies "procedures" for "*whenever a first offender is arrested* for any offense as defined in Section 11—501 or a similar provision of a local ordinance" (emphasis added) (625 ILCS 5/6—206.1 (West 2008)). We conclude from this language that a driver's status as a "first offender" is determined as of the date of the arrest for the current offense. In this case, we reckon Damkroger's status as a "first offender" as of July 17, 2009, the date of her arrest in case number 09—DT—408. Section 11—500 defines "first offender" in relevant part as "any person who has not had a driver's license suspension for violating Section 11—501.1 within 5 years prior to the date of the current offense." 625 ILCS 5/11—500 (West 2008). As there is no dispute that Damkroger had no other qualifying driver's license suspensions within five years of July 17, 2009, the question is solely whether the suspension stemming from case number 09—DT—361 occurred, for purposes of section 11—500, prior to July 17, 2009.

Renewing the parties' disagreement from the court below, the Secretary asserts that for purposes of section 11—500 the suspension in case number 09—DT—361 was imposed on July 2, when the Secretary sent Damkroger written confirmation of the suspension, while Damkroger contends that the suspension cannot be said to have preceded its effective date, August 6.

This discussion requires us to examine how statutory summary suspensions are issued. There are several relevant provisions. The first is section 11—501.1 of the Code (625 ILCS 5/11—501.1 (West 2008)). Subsections (a) and (d) of section 11—501.1 (625 ILCS 5/11—501.1(a), (d) (West 2008)) provide that, where a driver is arrested for DUI under section 11—501 and submits to a chemical test that reveals a BAC of 0.08 or greater, the police shall file with the Secretary a sworn report of the test. Subsection (f) (625 ILCS 5/11— 501.1(f) (West 2008)) requires the officer submitting the sworn report to serve "immediate notice of the statutory summary suspension on the person[,] and the suspension and disqualification shall be effective as provided in [subsection] (g)." Subsection (g) provides that the summary suspension "shall take effect on the 46th day following the date the notice of the statutory summary suspension was given to the person." 625 ILCS 5/11—501.1(g) (West 2008). Subsection (e) states that, "[u]pon receipt" of the sworn report of the officer, the Secretary "shall enter the statutory summary suspension *** effective as provided in [subsection] (g)." 625 ILCS 5/11—501.1(e) (West 2008). Also "[u]pon receipt" of the sworn report of the officer, the Secretary is to "confirm the statutory summary suspension by mailing a notice of the effective date of the suspension to the person and the court of venue." 625 ILCS 5/11—501.1(h) (West 2008). The Secretary's entry and confirmation of the suspension are contemporaneous actions. See *People v. McKenna*, 328 Ill. App. 3d 396, 401 (2002). Subsections (e) and (h) of section

11—501.1 contemplate that the Secretary will take these formal actions on the suspension in advance of its effective date.

The Code elsewhere ties the suspension to action by the Secretary. Section 1—204, part of the definitional preamble of the Code, defines "[s]uspension of driver's license" as "[t]he temporary withdrawal *by formal action of the Secretary* of a person's license or privilege to operate a motor vehicle on the public highways, for a period specifically designated by the Secretary." (Emphasis added.) 625 ILCS 5/1—204 (West 2008).

That a suspension is deemed imposed before its effective date is, as the Secretary notes, implied by section 2—118.1(b) of the Code (625 ILCS 5/2—118.1(b) (West 2008)), which provides that a driver may, "[w]ithin 90 days after the notice of statutory summary suspension served under Section 11—501.1," move "to have the statutory summary suspension rescinded." Because the driver need not wait any length of time before filing the motion to rescind, but simply may not file it after 90 days following the notice of the suspension (which section 11—501.1(f) requires to be served immediately by the officer), the driver may make the motion to rescind before the suspension becomes effective on the forty-sixth day following the notice. We agree with the Secretary that the Code, by permitting a driver to seek rescission of the suspension before its effective date, deems the suspension to exist even before it goes into effect.

Based on these provisions, the Secretary suggests that the Code "acknowledges the difference between the imposition of a suspension and the execution of one." The Secretary submits that "[a] suspension occurs when the Secretary formally imposes one, *** but does not take effect until 46 days after the DUI offense is committed." Under the Secretary's construction, a driver is not a "first

offender" if, at the time of the current offense, the Secretary had taken formal action to impose a suspension, even if the suspension would not become effective until later.

We agree with the Secretary's interpretation that a summary suspension commences for purposes of section 11—500 (defining "first offender") when the Secretary takes formal action to impose the suspension and not when the suspension becomes effective on the forty-sixth day from the notice given by the arresting officer. We recognize that our interpretation puts us at odds with *Crawford*, which holds that a summary suspension commences for purposes of section 11— 500 when the offense requiring suspension occurs. See *Crawford*, 196 Ill. App. 3d at 29-30. Though in *Crawford* the relevant statutory provisions were substantially similar to their current versions (see, *e.g.*, Ill. Rev. Stat. 1987, ch. 95½, pars. 1—104, 11—500, 11—501.1), *Crawford*'s holding is suspect because the court did not cite section 11—501.1 or section 1—104, which address the Secretary's role in the summary suspension process. Moreover, *Crawford* was decided by the Fourth District Appellate Court, and we are not bound by the decisions of our sister districts (*Schramer v. Tiger Athletic Ass'n*, 351 Ill. App. 3d 1016, 1020 (2004)). As *Crawford* is neither binding nor persuasive, we decline to follow it.

Damkroger cites two cases, *People v. Kotz*, 223 Ill. App. 3d 524 (1992), and *People v. Hardin*, 203 Ill. App. 3d 374 (1990), that she believes are authority for considering a suspension imposed for purposes of section 11—500 as of the effective date of the suspension. In both cases, the relevant language of section 11—500 was as it is now, *i.e.*, a "first offender" was one who did not have a driver's license suspension within five years prior to her arrest for the current offense. See Ill. Rev. Stat. 1989, ch. 95½, par. 11—500.

In *Hardin*, the Secretary appealed from the trial court's order directing him to issue the defendant a judicial driving permit (JDP). The Secretary argued that a JDP was not appropriate because the defendant had a prior license suspension. *Hardin*, 203 Ill. App. 3d at 376. This court noted that both parties were relying on an outdated version of section 11—500 (in fact, it was the version applied in *Crawford*, whereby a driver was not a "first offender" if she had any previous license suspension, regardless of how remote in time). *Id.* Applying the relevant version of the statute, we said:

> "The prior suspension *was effective* on January 11, 1984; the current offense did not take place until May 7, 1989, more than five years later. Thus, the trial court correctly determined that the defendant is a first offender within the meaning of the law in effect when the ruling was made." (Emphasis added.) *Id.*

Damkroger seizes on *Hardin*'s reliance on the effective date of the suspension in calculating the five-year period. *Hardin*, however, is of no force on the issue at hand. Most of the opinion was devoted to pointing out the parties' misapprehension as to which version of section 11—500 applied. When time came for us to reach the merits, our application of section 11—500 was perfunctory and devoid of any discussion as to when a suspension is properly deemed imposed for purposes of section 11—500. The parties apparently did not raise the issue. In fact, there was no issue to raise because, whether deemed imposed when the offense occurred, when the Secretary took action, or when the suspension took effect, the previous suspension in *Hardin* was more than five years prior to the current offense. Moreover, though *Hardin* did make reference to when the prior suspension was "effective," we did not clarify what we meant by "effective." Also, to the extent that *Hardin* can be read as holding that for purposes of section 11—500 a summary suspension is deemed imposed as

of its effective date, its analysis was incomplete because it cited none of the statutory provisions (worded the same then as now) tying the imposition of a summary suspension to formal action by the Secretary. See, *e.g.*, Ill. Rev. Stat 1989, ch. 95½, par. 1—204 (defining suspension of driver's license). *Hardin* is of no guidance here.

The issue in *Kotz* was more related to the issue at hand, but *Kotz* is ultimately of no help either. In contention in *Kotz* was whether, under section 11—500, "the second arrest must occur within five years of the *imposition* of the first suspension or whether it must occur within five years of the *termination* of the first suspension." (Emphases in original.) *Kotz*, 223 Ill. App. 3d at 525-26. The issue had consequence for the defendant in Kotz because her second arrest occurred on September 12, 1990, and the prior suspension "had become effective on March 26, 1985" (outside the five-year window) and "terminated on September 26, 1985" (within the five-year window). *Id.* at 524-25. The *Kotz* court relied on case law, including *Hardin*, to conclude that "the five-year *** period should be calculated using the *effective date* of the first suspension rather than the suspension termination date." (Emphasis added.) *Id.* at 526.

The *Kotz* court evidently was not asked to consider whether the prior suspension could be deemed imposed before its effective date. The defendant might have realized that she did not need to raise this issue because the effective date of the suspension was itself beyond the five-year window. Since the issue that concerns us here was not presented there, *Kotz* is inapposite. Even if a holding on the issue at hand could be inferred from *Kotz*, it would be of dubious value because *Kotz*, like *Hardin*, apparently considered none of the provisions linking the imposition of a suspension to formal action by the Secretary. See, *e.g.*, Ill. Rev. Stat. 1989, ch. 95 ½, par. 1—204 (defining suspension of driver's license). Moreover, *Kotz* was decided by the Third District Appellate Court, and again

we are not bound by the decisions of our sister districts (*Schramer*, 351 Ill. App. 3d at 1020). Consequently, neither *Hardin* nor *Kotz* is a useful guide in determining when a suspension is deemed imposed for purposes of section 11—500 (defining "first offender").

We hold that Damkroger was not entitled to a MDDP in case number 09—DT—408 because she was not a "first offender" when she was arrested in that case. The interpretation most faithful to the Code, and indeed the only interpretation advanced by the Secretary, is that for purposes of section 11—500 a statutory summary suspension is imposed when the Secretary enters and confirms the suspension per sections 11—501.1(e) and 11—501.1(h). Therefore, if, within five years prior to the current offense, a driver has had a summary suspension entered and confirmed by the Secretary, that person is not a "first offender" under section 11—500. On July 2, 2009, Damkroger was sent confirmation from the Secretary that he had entered the summary suspension stemming from her arrest in case number 09—DT—361. Consequently, when she was arrested in case number 09—DT—408 on July 17, 2009, Damkroger was not a "first offender" and therefore was not entitled to a MDDP.[1] Accordingly, the court was barred from directing the Secretary to issue the MDDP, and the Secretary could not be held in contempt for failing to comply with the directive. Because the fact that Damkroger was not a "first offender" is a sufficient ground for reversing the contempt judgment, we do not reach the Secretary's alternative argument that, even if Damkroger was a first

---

[1]When she was arrested on July 17, 2009, in case number 09—DT—408, Damkroger was still within the 45-day window stemming from her arrest in case number 09—DT—361 and, therefore, was still licensed to drive. However, as of July 2, 2009, the date the Secretary confirmed the suspension in case number 09—DT—361, Damkroger was no longer a "first offender," which disqualified her from receiving a MDDP in case number 09—DT—408.

offender, she was not entitled to a MDDP in case number 09—DT—408 because, by the time the court issued the MDDP order, her license was "otherwise invalid" (625 ILCS 5/6—206.1(a)(1) (West 2008)) due to the Secretary's formal action on the summary suspension in case number 09—DT—361.

For the foregoing reasons, we reverse the judgment of the circuit court of De Kalb County.

Reversed.