# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McLennon*, 2011 IL App (2d) 091299

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS R. McLENNON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-1299 |
| Filed | September 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for criminal damage to property and disorderly conduct arising from an incident in which he resisted while being treated in a hospital emergency room were affirmed over his contentions that the affirmative defense of self-defense applied to both charges and that he was not proved guilty of disorderly conduct, but his fines under the Violent Crime Victims Assistance Act were reduced from $20 to $4 and one of the two 10% bond fees imposed was vacated. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 09-CM-1433; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Thomas A. Lilien and Christopher McCoy, both of State Appellate
Defender's Office, of Elgin, for appellant.

Louis A. Bianchi, State's Attorney, of Woodstock (Lawrence M. Bauer
and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's
Office, of counsel), for the People.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Schostok and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a bench trial, defendant, Thomas R. McLennon, was convicted of one count of criminal damage to property under $300 (720 ILCS 5/21-1(1)(a) (West 2008)) and one count of disorderly conduct in violation of section 26-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/26-1(a)(1) (West 2008)). Defendant was sentenced to 9 months' court supervision and 30 hours of community service and assessed various costs, fees, and fines. He now appeals, alleging three errors. First, he asserts that the affirmative defense of self-defense was applicable to both counts. Second, he argues that the State failed to prove him guilty of disorderly conduct beyond a reasonable doubt. Third, defendant seeks to reduce the Violent Crime Victims Assistance Fund (the Fund) (725 ILCS 240/10 (West 2008)) fines from $20 to $4 and to vacate one of the two 10% bond fees imposed by the trial court. For the reasons that follow, we affirm as modified.

¶ 2                                        I. BACKGROUND

¶ 3 The pertinent facts are as follows. On May 29, 2009, defendant fell asleep while waiting for his food at Porter's restaurant in Crystal Lake. Defendant testified that he had been awake for over 24 hours. He explained that, after working the night shift the previous night and running errands throughout that day, he was never able to sleep. While at the restaurant, defendant consumed alcohol, though defendant claimed it was only two drinks. At some point, a police officer was called to the scene, and after defendant awoke, the officer escorted him from the restaurant to an ambulance. Defendant was not placed under arrest, and he stated that he told the paramedics, "please do not put me in the ambulance." Despite his refusal, defendant was taken to Centegra Hospital in Woodstock. At the hospital, defendant became agitated and began screaming and swinging at hospital staff after being told what his plan of care was. During the course of treatment, defendant grabbed and broke a lead wire to an EKG machine. Once police arrived, defendant was arrested for criminal damage to property. The State later added a count of disorderly conduct.

¶ 4 The prosecution called the attending nurse, Jamie Lynn DeCraene, as its first witness. DeCraene testified that she first had contact with defendant at the hospital emergency room.

Defendant appeared unsteady when standing or walking and his speech was "very slurred and erratic." Upon defendant's arrival, he was yelling at the paramedics and security guards. DeCraene told defendant that if he wanted to go home he had to provide her with a phone number of someone who could take him home, at which point defendant became combative. Defendant provided two wrong numbers and "laughed" when the calls were answered by random people. Defendant then stated, seemingly in sarcasm, that he "didn't want to go home" and that he "really liked it here." As a result of his sudden mood shifts, DeCraene feared that alcohol may not have been the only substance in his system and she told defendant that she needed to draw his blood. At this point, defendant became very angry. Defendant clenched his fists and began screaming and swinging at the staff. As a result of his conduct, he was placed in restraints by security guards.

¶ 5   DeCraene testified that she would "usually put restraints on patients," but in this instance, she was too afraid of being hurt and "felt very scared." The hospital restraints allow 6 to 10 inches of mobility and are used to limit a patient's ability to hurt himself or others. Given that defendant had some mobility, his arm was forcibly held down by two security guards while DeCraene drew blood. About 15 minutes after completion of the blood draw and while defendant was still restrained, DeCraene hooked up defendant to an EKG machine, without his consent or consulting any physician. An EKG machine has three lead wires that monitor the patient's heart rhythm and rate. DeCraene gave two justifications for attaching defendant to the machine. First, she feared that defendant would go into withdrawal, which could lead to seizures or death. Withdrawal may occur when an individual suddenly stops the use of alcohol after a chronic or prolonged ingestion. Second, electronic monitoring was necessary due to the distance between the emergency room and the nurses' station. While she was trying to place the third lead wire on defendant, defendant grabbed the wire and snapped it in two. Still present, the security guards tried to grab the rest of the wire from his hand. At some point after defendant grabbed the wire, police were called. On redirect, DeCraene testified that the wires were owned by the hospital and that breaking the wire rendered it unusable. DeCraene also stated that emergency rooms are high stress environments, where people yell and become upset. Furthermore, patients sometimes change their minds about consenting to procedures.

¶ 6   During cross-examination, defense counsel highlighted that DeCraene never asked defendant whether he consented to medical treatment. DeCraene recognized that a patient has a right to refuse care but said she believed that such a refusal can be overridden by a nurse or doctor, based on factors like blood-alcohol content and behavior. Though not sure whether it was hospital policy, she stated that patients must be of "sound mind" and "alert and oriented" to make medical decisions for themselves. Further, she was unsure whether she ever consulted the attending physician regarding defendant's ability to refuse treatment. She did not remember defendant refusing care at any time nor did she inquire about defendant's motivations for his conduct. However, she claimed that, prior to drawing defendant's blood, she asked defendant whether he wanted to decline the blood draw, but she did not remember the specifics of what he said. Based on defendant's reaction to the blood draw, DeCraene stated that it appeared that defendant was not consenting to the procedure.

¶ 7   The State next called Officer Charles Vorderer of the Woodstock police department.

-3-

Vorderer testified that, based on defendant's bloodshot, glossy eyes and the strong odor of alcohol emanating from his breath, defendant was "definitely under the influence of alcohol." During a conversation between defendant and Vorderer, defendant admitted to breaking the EKG wire and stated that he "had been treated horribly." Defendant was placed under arrest for criminal damage to property. At the conclusion of Vorderer's testimony, the State rested. Defendant made a motion for a directed finding on both counts, which the trial court denied.

¶ 8 Defendant then testified on his own behalf. His recollection of the events of May 29, 2009, differed in many respects from that of DeCraene. Defendant stated that he arrived at Porter's restaurant and ordered two plates of oysters. He consumed only two martinis and merely nodded off as a result of working the night shift the previous night. When he was escorted to the ambulance by the Crystal Lake police officer, he asked not to be placed in the ambulance, because he believed he was fine to walk home. He asked if he was being placed under arrest, and the officer said no. Defendant testified that he refused treatment from the paramedics. Defendant asserted that he was restrained when he was put in the ambulance, not at the hospital, and that it was in the ambulance, not the emergency room, where the EKG wires were attached and pulled off. He testified that the restraints were painful and, due to the pain, he pleaded with the security guard to reposition his arms in order to be more comfortable.

¶ 9 Defendant testified that DeCraene was not the attending nurse; rather, she was one of the paramedics in the ambulance. Further, defendant testified that, while he was in the ambulance, the paramedics attached only one wire and this was the wire he broke, while stating "no means no." When defendant pulled off the wire, DeCraene laughed and stated, "that's criminal damage to property." He testified that no electronic equipment was attached to him at the hospital and that he just "laid there" most of the time.

¶ 10 Ultimately, the trial court found the State's witnesses consistent and credible and defendant's testimony inconsistent and not credible. Defendant was found guilty on both counts. The trial judge did not expressly address whether defendant refused treatment or whether he consented to treatment. This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant raises three issues. First, defendant argues that the State did not prove him guilty beyond a reasonable doubt, because he was acting in self-defense when he purportedly committed the offenses at issue in this case. Second, defendant contends that the evidence was insufficient to prove him guilty of disorderly conduct. Third, he argues–and the State agrees–that the fines imposed for the Fund (725 ILCS 240/10 (West 2008)) must be reduced from $20 to $4 and that one of the two 10% bond fees imposed by the trial court must be vacated. We will address these issues in turn.

¶ 13 A. Self-Defense

¶ 14 Defendant first contends that he was acting in self-defense. This defense is codified in

section 7-1 of the Criminal Code of 1961, in pertinent part, as follows: "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2008). An individual may assert self-defense as an affirmative defense to a charge for conduct that might otherwise constitute a crime. See *People v. Lee*, 213 Ill. 2d 218, 225 (2004). It is an affirmative defense under which a defendant admits to the offense but denies responsibility. *People v. Podhrasky*, 197 Ill. App. 3d 349, 352 (1990). Section 7-1 does not limit itself to particular offenses, yet the defense is normally reserved for crimes against the person. *People v. Brant*, 394 Ill. App. 3d 663, 672 (2009). In this case, defendant attempted to assert the defense against charges of criminal damage to property and disorderly conduct. Thus, we must consider whether self-defense may be properly asserted against charges for these two offenses.

¶ 15    As to both offenses, defendant claims that he was defending himself against a battery. Defendant points out that unauthorized medical treatment constitutes a battery. *In re Estate of Allen*, 365 Ill. App. 3d 378, 385 (2006). We will assume for the purposes of deciding this case that the conduct engaged in by the medical personnel who treated defendant constituted a medical battery. We now turn to the question of whether that provided a basis for defendant to assert self-defense to a charge of criminal damage to property.

¶ 16                              1. Criminal Damage to Property

¶ 17    Defendant contends that he had authority to use force to grab and break the EKG wire because he did not consent to the medical treatment. He argues that this authority derived from the statutory defense of defense of person. See 720 ILCS 5/7-1(a) (West 2008). Though defendant raised the issue at trial, the trial court did not expressly rule on it; thus, we do not know if the trial court denied the defense as a matter of law or fact. In any event, the question of whether self-defense is an available defense to this charge is a question of law, subject to *de novo* review. *Brant*, 394 Ill. App. 3d at 669.

¶ 18    The parties rely primarily on two cases that apply section 7-1 outside the context of offenses against a person. Defendant relies on *In re T.W.*, 381 Ill. App. 3d 603 (2008), while the State relies on *Brant*, 394 Ill. App. 3d 663. In *In re T.W.*, 381 Ill. App. 3d at 610, the respondent asserted self-defense against a charge of disorderly conduct. The respondent, a student, was involved in a physical altercation with another student on a school bus. *In re T.W.*, 381 Ill. App. 3d at 606. The reviewing court found that the respondent could invoke self-defense because the purported victim had used force against the respondent. *In re T.W.*, 381 Ill. App. 3d at 611. The court noted that the victim's action "constituted an offense of a physical nature and carried with it the potential to cause *** harm." *In re T.W.*, 381 Ill. App. 3d at 611. The court also stated that the decision was limited to the facts of that case. *In re T.W.*, 381 Ill. App. 3d at 611. Parenthetically, we note that the statutory requirement that the force used by the defendant be "against another" (720 ILCS 5/7-1(a) (West 2008)) was not at issue in *In re T.W.* While disorderly conduct may or may not involve the use of force, depending on the underlying facts (*People v. Albert*, 243 Ill. App. 3d 23, 27 (1993)), as the offense was charged in *In re T.W.*, there was no question that the respondent was

alleged to have used force against the victim.

¶ 19      That issue arose in *Brant*, 394 Ill. App. 3d 663, upon which the State relies. In *Brant*, the defendant entered the victim's home, without consent, to engage in an ongoing fight involving the defendant's friends. *Brant*, 394 Ill. App. 3d at 666. The defendant asserted self-defense, but the trial court ruled that self-defense was not an available defense against a charge for the offense of criminal trespass to a residence. *Brant*, 394 Ill. App. 3d at 668-71. This court agreed with the trial court. We explained, "Although force may be used to effect an entry or used subsequent to an entry, the criminal trespass offense is complete upon entry." *Brant*, 394 Ill. App. 3d at 674. Thus, we continued, "Conduct that occurs before or after entry, whether forceful or not, has no bearing upon a defendant's guilt." *Brant*, 394 Ill. App. 3d at 674. Moreover, the plain language of section 7-1 states that, for force to be justified as self-defense, it must be directed at another person. *Brant*, 394 Ill. App. 3d at 673; see 720 ILCS 5/7-1 (West 2008) ("A person is justified in the *use of force against another* when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." (Emphasis added.)). Since criminal trespass to property could never have as its basis behavior involving directing force against another, a defendant may not assert self-defense against such a charge. *Brant*, 394 Ill. App. 3d at 674, 676.

¶ 20      As this case involves criminal damage to *property*, it is clearly controlled by *Brant*. Similar to the offense of criminal trespass to a residence discussed in *Brant*, the offense of criminal damage to property does not require the State to prove force. See 720 ILCS 5/21-1(1)(a) (West 2008). The offense requires the State to prove only that a defendant knowingly damaged property. See 720 ILCS 5/21-1(1)(a) (West 2008). Although force can be used to effect the damage to the property, the force is not directed at another. See 720 ILCS 5/21-1(1)(a) (West 2008). The plain language of section 7-1, however, indicates that a person is justified in the use of force against only *another*. See 720 ILCS 5/7-1(1)(a) (West 2008). Here, the defendant's underlying conduct was not directed at another person; rather, the force defendant used was directed at the wire. Accordingly, defendant could not assert self-defense against this charge.

¶ 21      We note that defendant also relies on *People v. Grass*, 126 Ill. App. 3d 540 (1984), a case from the Fifth District of this appellate court. In that case, the defendant was charged with criminal damage to property exceeding $300. A portion of the damage occurred when the defendant threw a hammer at a truck whose driver, he contended, was trying to run him over. The facts of *Grass* were ambiguous in that they did not show whether the defendant was throwing the hammer at the truck or whether he was throwing it at the driver and incidentally damaged the truck. See *Grass*, 126 Ill. App. 3d at 541-42. The Fifth District concluded that this constituted evidence that a portion of the damage–which would have been sufficient to reduce the offense to criminal damage under $300–was not criminally caused, as the evidence would "allow the jury to consider the affirmative defense of self-defense." *Grass*, 126 Ill. App. 3d at 544-45. This proposition was true if the damage to the truck was incidentally caused by force directed at another. However, we note that the self-defense statute that the *Grass* court was applying is identical to the one at issue in this case. Compare 720 ILCS 5/7-1(a) (West 2008), with Ill. Rev. Stat. 1983, ch. 38, ¶ 7-1. Thus, to the extent

that *Grass* can be read as permitting a self-defense instruction where a defendant directs force solely against property, it is inconsistent with the plain language of the self-defense statute. In this case, defendant directed force against property, so *Grass*, read consistently with section 7-1(a), does not support his position.

¶ 22   Before closing, we acknowledge defendant's assertion that, if he had grabbed DeCraene's hand, thus committing a battery, he could have asserted self-defense. He points out that his actions were the "less aggressive step." He continues, "Not allowing for self-defense in such cases would create an incentive for an accused to be more violent and threaten bodily harm in order to be able to claim self-defense." Indeed, this paradox was recognized by a Texas court in *Boget v. State*, 74 S.W.3d 23, 30-31 (Tex. Crim. App. 2002), which explained as follows:

> "For instance, assume a person is about to be run down by a speeding car. If she brandishes her pistol and fires at the front tires of the car to stop the vehicle, she will not receive a charge on self-defense should she be indicted for criminal mischief. On the other hand, if she shoots the driver she is entitled to a charge on self-defense in a murder prosecution. This result is contrary to the object of the statute because it punishes the individual who used the least force possible in self-preservation."

While we are not unsympathetic to defendant's concerns, as self-defense is codified in this state, such issues are best directed to the legislature. Our role is simply to effectuate the intent of the legislature as expressed in the plain language of the statute. *People v. Damkroger*, 408 Ill. App. 3d 936, 952 (2011). Here, that plain language limits the defense to the use of force against another. We also note that the existence of the defense of necessity (see 720 ILCS 5/7-13 (West 2010) ("Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct.")) mitigates this apparent paradox to a substantial degree, as it is not limited to force directed at a person. However, we emphasize that, because defendant does not raise or argue the defense of necessity in this appeal, we have not considered it, and nothing in this opinion should be read as implicating that defense. Accordingly, we hold that self-defense may not be asserted as an affirmative defense against a charge of criminal damage to property. We now turn to the charge of disorderly conduct.

¶ 23                                    2. Disorderly Conduct

¶ 24   Defendant next argues that he was acting in self-defense when he engaged in the conduct that resulted in his conviction of disorderly conduct. Initially, we note that the evidence established that, unlike criminal damage to property, this offense involved force directed at a person. DeCraene testified that defendant "clenched his fists and then started verbally abusing and screaming at the staff" and that "he started swinging at [the] staff." Parenthetically, we note that the State asserts that self-defense was unavailable because the State "was not required to prove the use of force against a person to sustain *** the charge of *** disorderly conduct." However, the charging instrument does not control whether self-

defense is available; rather, that is determined by the evidence presented at trial. See *People v. Everette*, 141 Ill. 2d 147, 156 (1990) ("It has long been the position of this court that a defendant is entitled to instructions on those defenses which the evidence supports."). Furthermore, our assumption that defendant did not consent to medical care entails the proposition that a battery was–at some point–directed at defendant. Hence, both requirements of *Brant*, 394 Ill. App. 3d 663, and *In re T.W.*, 381 Ill. App. 3d 603, are satisfied.

¶ 25     Nevertheless, we find that defendant's claim of self-defense is not well founded. An additional requirement under section 7-1 is that the threatened force be imminent. 720 ILCS 5/7-1(a) (West 2008) ("A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's *imminent* use of unlawful force." (Emphasis added.)); see also *Lee*, 213 Ill. 2d at 225. This requirement has been expressed as follows: " 'Imminent' " means " 'present,' " " 'immediate,' " and " 'reasonably probable' " rather than " 'merely possible.' " *People v. Robinson*, 375 Ill. App. 3d 320, 336 (2007). One court explained that "imminent," as used in that jurisdiction's self-defense statute, meant: " 'ready to take place,' 'near at hand,' 'hanging threateningly over one's head,' and 'menacingly near.' [Citation.]" *State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006) (the statute at issue in *Shanahan* states, " 'A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force.' " (quoting Iowa Code § 704.3 (2003))).

¶ 26     Here, DeCraene had not threatened defendant with imminent harm when defendant engaged in the conduct forming the basis for the disorderly conduct charge. DeCraene testified that she told defendant that if he wanted to go home he had to provide her with a phone number of someone who could take him home. He gave her two wrong phone numbers and laughed when unknown people answered. Defendant also stated that "he really liked it here." Upon hearing his planned course of treatment and before DeCraene directed any physical act toward defendant, he became angry, yelled, clenched his fists, and swung at hospital staff. Given that no treatment had started when defendant breached the peace, there was no imminent threat as required to invoke section 7-1. Therefore, we reject defendant's claim that he was acting in self-defense.


¶ 27                              B. Sufficiency of the Evidence

¶ 28     Alternatively, defendant maintains that he was not proven guilty beyond a reasonable doubt of disorderly conduct. He argues that his actions in the emergency room did not breach the peace and were not unreasonable. When we review the sufficiency of the evidence, we determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We note that the trial court found the State's witnesses consistent and credible and defendant's testimony inconsistent and not credible.

¶ 29     To prove defendant guilty of disorderly conduct, the State had to prove that he knowingly

did any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. 720 ILCS 5/26-1(a)(1) (West 2008). Therefore, the State had to prove that defendant knowingly engaged in conduct that (1) was unreasonable, (2) alarmed or disturbed another, and (3) provoked a breach of the peace. 720 ILCS 5/26-1(a)(1) (West 2008).

¶ 30    Disorderly conduct is loosely defined. As a highly fact-specific inquiry, it "embraces a wide variety of conduct serving to destroy or menace the public order and tranquility." *In re B.C.*, 176 Ill. 2d 536, 552 (1997). The main purpose of the offense is to guard against "an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." 720 ILCS Ann. 5/26-1, Committee Comments-1961, at 200 (Smith-Hurd 2010). The activity that can constitute disorderly conduct:

> "is so varied and contingent upon surrounding circumstances as to almost defy definition. Some of the general classes of conduct which have traditionally been regarded as disorderly are here listed as examples: the creation or maintenance of loud and raucous noises of all sorts; unseemly, boisterous, or foolish behavior induced by drunkenness ***. In addition, the task of defining disorderly conduct is further complicated by the fact that the type of conduct alone is not determinative, but rather culpability is equally dependent upon the surrounding circumstances. *** [S]houting, waving and drinking beer may be permissible at the ball park, but not at a funeral." 720 ILCS Ann. 5/26-1, Committee Comments-1961, at 200 (Smith-Hurd 2010).

¶ 31    Defendant contends that he did not breach the peace. Generally, to breach the peace, a defendant's conduct must threaten another or have an effect on the surrounding crowd. See *In re D.W.*, 150 Ill. App. 3d 729, 732 (1986). But see *People v. Albert*, 243 Ill. App. 3d 23, 27 (1993) (upholding conviction where the defendant shouted at 2 a.m. in residential neighborhood, without crowd or threats). However, a breach of the peace can occur without overt threats or profane and abusive language. See *People v. Davis*, 82 Ill. 2d 534 (1980); *People v. Allen*, 288 Ill. App. 3d 502 (1997). Although the context of the conduct is important in determining whether a breach of the peace took place, the act need not occur in public. *Davis*, 82 Ill. 2d at 538 ("A breach of the peace may as easily occur between two persons fighting in a deserted alleyway as it can on a crowded public street.").

¶ 32    Defendant also contends that his conduct was reasonable. Like breach of the peace, reasonableness is determined by a defendant's conduct in relation to the surrounding circumstances. See *Albert*, 243 Ill. App. 3d at 27; *People v. Suriwka*, 2 Ill. App. 3d 384, 392 (1971). Though an objective standard, "[t]he reasonableness of a person's behavior is necessarily tied to the facts and circumstances of the situation in which he or she is placed." (Internal quotation marks omitted.) *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993).

¶ 33                    1. Whether Defendant Breached the Peace

¶ 34    Defendant raises three arguments as to why he did not breach the peace. First, he argues that he did not utter any verbal threats or profanity toward the hospital staff. Next, he contends that his acts did not occur in public and no crowd gathered around him. Finally, he

argues that, since his words were not fighting words, his language was protected by the first amendment. We first turn to defendant's argument that his conduct did not breach the peace because he used no verbal threats or profanity toward the staff.

¶ 35    The Illinois Supreme Court in *Davis* articulated that the main purpose of the offense of disorderly conduct is to "guard against 'an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification.' " *Davis*, at 82 Ill. 2d at 538 (quoting Ill. Ann. Stat., ch. 38, ¶ 26-1, Committee Comments, at 149 (Smith-Hurd 1977) (now see 720 ILCS Ann. 5/26-1, Committee Comments-1970, at 200 (Smith-Hurd 2010))). We find considerable guidance from *Davis* for the resolution of this appeal. In that case, the defendant went to the home of an elderly woman who had previously sworn out a complaint against the defendant's brother. The defendant stated that his brother was not going to jail and that " '[i]f he do, Miss Pearl, you know me,' " while waving sheets of paper. *Davis*, 82 Ill. 2d at 536. Our supreme court found that the defendant's actions unreasonably invaded the right of the victim not to be harassed. Here, DeCraene testified that defendant began yelling at the hospital staff upon arriving at the hospital. When told his plan of care, he got angry, clenched his fists, and swung at the staff, which required security guards to restrain him. DeCraene also testified that she normally put restraints on patients, but was too scared in this instance. It is apparent that defendant unreasonably invaded her right not to be harassed, as she did not perform tasks normally associated with her duties as a nurse. DeCraene's response to defendant's conduct also illustrates that his conduct directly threatened the staff. See *People v. Bradshaw*, 116 Ill. App. 3d 421 (1983).

¶ 36    *Davis* provides further guidance on defendant's next argument. He argues that his conduct did not breach the peace because it did not occur in public and no crowd gathered. However, the defendant's conduct in *Davis* occurred in the victim's home, away from the public and where no crowd gathered. *Davis*, 82 Ill. 2d at 536; see also *In re D.W.*, 150 Ill. App. 3d at 731 (denying defendant's argument that the conduct needs to occur in public when conduct occurred at school). Although the place of the conduct is certainly a relevant factor, disorderly conduct can occur between "two persons fighting in a deserted alleyway [or] on a crowded public street." *Davis*, 82 Ill. 2d at 538. All courts addressing disorderly conduct subsequent to *Davis* hold that a breach of the peace does not need to occur in public. See, *e.g.*, *In re D.W.*, 150 Ill. App. 3d at 731. Defendant's conduct of yelling, clenching his fists, and swinging at the staff certainly invaded the right of DeCraene and other hospital staff members not to be harassed mentally and physically. See *Davis*, 82 Ill. 2d at 538. Further, defendant needed to be restrained, which illustrates that he threatened the staff. As this is sufficient to show a breach of the peace, defendant's contention is without merit.

¶ 37    Defendant relies on *People v. Bradshaw*, 116 Ill. App. 3d 421 (1983), to argue that yelling and screaming alone is not a breach of the peace. In *Bradshaw*, the defendant yelled profane language from outside a bar. The court held that the conduct did not breach the peace because it had no effect on the surrounding crowd and no one was threatened. *Bradshaw*, 116 Ill. App. 3d at 422; see *People v. Gentry*, 48 Ill. App. 3d 900 (1977). In light of defendant's conduct that went beyond yelling, *Bradshaw* is not analogous to the instant case. Defendant's yelling was combined with his becoming angry, clenching his fists, and swinging at staff to the point of needing to be restrained. Moreover, even though defendant certainly threatened

-10-

the staff, our courts have held that disorderly conduct can occur without threats or an effect on a crowd. See *Albert*, 243 Ill. App. 3d at 28 (finding that yelling outside home at 2 a.m. rose to the level of disorderly conduct); *People v. Ellis*, 141 Ill. App. 3d 632, 633 (1986) (conviction upheld where defendant tore down Christmas decorations from store's awning posts in front of store owners, who were inside the store).

¶ 38    Given that defendant's conduct involved both yelling and swinging at the hospital staff, thereby threatening the staff, it is unnecessary to address whether defendant's words alone were fighting words. Therefore, we find that defendant's conduct breached the peace. We next address whether the State proved beyond a reasonable doubt that defendant's conduct was unreasonable.

¶ 39                    2. Whether Defendant Acted in an Unreasonable Manner

¶ 40    Making several contentions, defendant maintains that his conduct was not unreasonable and therefore was insufficient to constitute disorderly conduct. We address each argument separately. First, he reasons that his conduct was not unreasonable because an emergency room is inherently a high stress and loud environment. At trial, DeCraene testified to that effect. We note that conduct occurring in an emergency room as opposed to another context might not constitute disorderly conduct. See *Bradshaw*, 116 Ill. App. 3d at 422; 720 ILCS Ann. 5/26-1, Committee Comments-1961, at 200 (Smith-Hurd 2010) ("shouting, waving and drinking beer may be permissible at the ball park, but not at a funeral"). However, the trial court noted that "there was no testimony there was any other abnormal or loud behavior going on at the time." We agree with the trial court that, since there was no evidence that this type of conduct was normal in the emergency room setting, it bears little on whether his conduct was reasonable.

¶ 41    At trial, DeCraene was unable to recall the specific words defendant used when he yelled at the hospital staff. As a result, defendant argues, the State failed to prove that his conduct was unreasonable. See *Suriwka*, 2 Ill. App. 3d at 392 (finding that conduct of defendant was not unreasonable when the State failed to prove the substance of words yelled at police officer). We disagree. The fact that DeCraene could not recall the specifics of defendant's words is not dispositive. See *Albert*, 243 Ill. App. 3d at 28. Moreover, disorderly conduct can occur without verbal outbursts. See *Ellis*, 141 Ill. App. 3d at 633 (defendant guilty of disorderly conduct for tearing down outdoor Christmas decorations in front of store owners, who were safely inside the store). Further, the record indicates that defendant continuously yelled at the staff from the moment he arrived at the emergency room. Regardless of the substance of his words, he was vocalizing in a loud, and thus unreasonable, manner. Nevertheless, that defendant swung at the medical staff upon hearing his plan of care–as DeCraene testified–was certainly unreasonable, even in the context of the emergency room.

¶ 42    Next defendant contends that DeCraene, by virtue of her status as an emergency room nurse, was different from a layperson in terms of her ability to cope with intoxicated people. Defendant points to DeCraene's testimony that she regularly observed persons under the influence of alcohol. He maintains that DeCraene's experience as a nurse means that defendant's conduct should be judged as if it were directed not at a layperson, but at a trained

professional. Defendant cites no law directly supporting such a proposition. The only plausible analogy is to compare DeCraene's status to that of a police officer. Due to their training and experience, police officers "must not conceive that every threatening or insulting word, gesture, or motion amounts to disorderly conduct." (Internal quotation marks omitted.) *People v. Trester*, 96 Ill. App. 3d 553, 555 (1981) (quoting *Oratowski v. Civil Service Comm'n*, 3 Ill. App. 2d 551, 561 (1954)). Arguably a person who routinely deals with intoxicated individuals could possess greater wherewithal in handling conduct associated with intoxication. However, if defendant's conduct of yelling and swinging had been directed at a police officer, his conduct certainly would have been unreasonable. See *People v. Jones*, 67 Ill. App. 3d 477 (1978); see also *People v. Hand*, 408 Ill. App. 3d 695 (2011). This fact refutes his assertion that his conduct was reasonable relative to a nurse's training and experience with intoxicated patients. Thus, we find that, based on defendant's conduct of yelling, clenching his fists, and swinging at staff, together with the surrounding circumstances, he did not act in a reasonable manner.

¶ 43 Finally, defendant contends that his conduct was reasonable because it was in the context of refusing care. He alludes to DeCraene's testimony that he did not appear to consent to medical treatment. However, we already addressed this contention when defendant claimed self-defense to the charge of disorderly conduct. After finding that he was entitled to claim self-defense, we held that defendant's conduct was not in response to an imminent threat. Similarly, because his use of force was not justified under section 7-1 (720 ILCS 5/7-1 (West 2008)), it cannot be reasonable here. In light of our previous holding, defendant's conduct of yelling, clenching his fists, and swinging at staff was unreasonable.

¶ 44 We conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of disorderly conduct.

¶ 45 C. Violent Crime Victims Assistance Fund

¶ 46 In addition to sentencing defendant to 9 months' supervision and 30 hours of community service, the court also assessed a number of fees and fines. Specifically, the trial court imposed two $20 fines for the Fund (725 ILCS 240/10 (West 2008)) and also imposed two 10% bond fees. Defendant argues and the State agrees that the fines assessed for the Fund must be reduced. Both parties also agree that defendant should have been assessed one 10% bond fee instead of two. See 725 ILCS 5/110-7(f) (West 2008). In light of the parties' agreement, the fines for the Fund are reduced to $4 each and one of the 10% bond fees is vacated. 725 ILCS 240/10(b) (West 2008); 725 ILCS 5/110-7(f) (West 2008).

¶ 47 III. CONCLUSION

¶ 48 In light of the foregoing, we modify the judgment of the circuit court of McHenry County to reduce each fine imposed for the Fund from $20 to $4 and vacate one of the 10% bond fees, and we affirm in all other aspects.

¶ 49 Affirmed as modified.