2021 IL App (4th) 170682

NO. 4-17-0682

FILED
March 26, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JERMAL O'NEAL, | ) | No. 14CF1059 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter C. Cavanagh, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion. Presiding Justice Knecht and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    In July 2017, a jury found defendant, Jermal O'Neal, guilty of (1) being an armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7 (West 2014)), and (2) unlawful possession of a weapon by a felon, a Class 2 felony (*id.* § 24-1.1(a), (e)). Subsequently, the State filed a verified petition for adjudication as a habitual criminal under section 5-4.5-95(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-95(a) (West 2014)), where defendant had two prior Class X felony convictions for armed robbery in Cook County case No. 93-CR-0812401 and intent to deliver a controlled substance in Champaign County case No. 98-CF-506. The trial court granted the petition and eventually sentenced defendant to a term of natural life imprisonment.

¶ 2 Defendant appeals, arguing (1) the trial court erred when it refused to instruct the jury on self-defense where the court mistakenly believed the affirmative defense was unavailable against defendant's charges and, because the error was not harmless beyond a reasonable doubt, the error violated defendant's due process rights; (2) alternatively, he received ineffective assistance of counsel where trial counsel failed to subject the State's case to meaningful adversarial testing by conceding guilt while failing to raise an available necessity defense and, further in the alternative, trial counsel's deficient performance prejudiced defendant by allowing him to admit guilt and leaving the jury no choice but to convict; (3) he is entitled to a new sentencing hearing where using his two prior Class X felony convictions to establish an element of the offense of being an armed habitual criminal and to qualify him for a life sentence under the habitual criminal statute constituted improper double enhancement; (4) his life sentence violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution because his sentence rested on a crime he committed as a juvenile and two nonviolent offenses; and (5) he is entitled to a new sentencing hearing where the trial court erroneously used his armed robbery conviction to impose a natural life sentence under section 5-4.5-95 of the Unified Code (*id*. § 5-4.5-95) because the conduct underlying that conviction was not classified as a Class X felony at the time of sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 In September 2014, the State charged defendant with (1) being an armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7 (West 2014)), and (2) unlawful possession of a weapon by a felon, a Class 2 felony (*id*. § 24-1.1(a), (e)). The charges stemmed from an incident on September 27, 2014.

¶ 5                              A. Pretrial Proceedings

¶ 6        On July 7, 2017, defense counsel filed a motion *in limine* and notice that defendant intended to offer an affirmative defense, self-defense. The trial court deferred ruling on the availability of self-defense until hearing the evidence at trial.

¶ 7        On July 11, 2017, the parties stipulated to defendant's prior Class X felony convictions for armed robbery in Cook County case No. 93-CR-0812401 and intent to deliver a controlled substance in Champaign County case No. 98-CF-506.

¶ 8                        B. Defendant's Jury Trial

¶ 9        Below, we summarize the relevant testimony elicited during defendant's July 2017 jury trial.

¶ 10                        1. *Christopher E. White*

¶ 11       Christopher E. White testified that on the evening of September 27, 2014, he hosted a small neighborhood barbecue in the backyard of his apartment complex in the 600 block of West Capitol Avenue in Springfield, Illinois. White testified defendant arrived at the barbecue towards the end of the evening.

¶ 12       After defendant arrived at the barbecue, a dispute arose between Tracy Davis and defendant. White explained that, although he was near defendant and Davis during the dispute, he could not hear the exchange between the two men. At some point during the dispute, Davis threw a beer at defendant. Immediately after Davis threw the beer, defendant pulled out a gun and shot Davis. After defendant shot Davis, Davis fell to the ground, and defendant took off.

¶ 13       White recalled he did not see defendant with a weapon prior to the shooting. White testified there was alcohol at the barbecue, but he could not remember how much alcohol he consumed that evening.

¶ 14                        2. *Carnell Brown*

¶ 15    Carnell Brown testified that, in September 2014, defendant dated Nora Ross and the two lived together with Ross's two daughters on New Street in Springfield, Illinois. On September 27, 2014, Brown was at Ross's residence with her daughter, Laquita, when defendant arrived home from work. Brown overheard defendant and Ross argue for about 10 to 15 minutes. According to Brown, defendant threatened to shoot Ross in the face.

¶ 16    After the argument, Brown observed Ross leave the residence and go across the street to the barbecue. Defendant went upstairs and, about 10 minutes later, left the residence and went across the street to the barbecue. Brown testified that, when defendant left the residence, he observed an object about eight to nine inches long in defendant's hip area.

¶ 17    Brown witnessed the shooting—from the porch of Ross's residence—which occurred about 5 to 10 minutes after defendant left the residence. Brown observed an argument between defendant and another man. Defendant shot the man after the man either spilled or threw beer on defendant. Brown estimated defendant and the man were about an arm's length apart during the shooting. Brown witnessed the shooting around 8 p.m., and he observed the shooting from a "pretty good distance." Brown could not hear the argument between the two men, but he watched the shooting unfold and never saw Davis go into his residence before the shooting.

¶ 18                    3. *Debra Uhlry*

¶ 19    Debra Uhlry testified that on September 27, 2014, she attended a barbecue with a friend, Lee Goins, in the 600 block of West Capitol Avenue in Springfield. Besides her friend, Uhlry interacted with those at the barbecue for the first time. Uhlry described Davis as "jovial, laid back, seemed in a great mood[,]" while she described defendant as "[v]ery quiet."

¶ 20     Before the shooting, Uhlry observed defendant and Davis argue by the patio. Uhlry then saw Davis throw a full beer at defendant, and in response, defendant pulled out a gun and shot Davis. Specifically, Uhlry stated, "After the beer was thrown at [defendant], he pulled out a weapon. I believe it was the kind you cock the trigger back. It didn't fire the first time. He had to do it twice before he fired in [Davis's] face, maybe three to four feet away from him." Uhlry testified the beer can hit defendant in the torso area and he did not fall down when it hit him. Uhlry witnessed defendant run into an alley after the shooting.

¶ 21     Uhlry consumed maybe two beers during the three hours preceding the shooting. Uhlry never observed Davis go into his residence before the shooting.

¶ 22                    4. *Angela Renee Robinette*

¶ 23     Angela Renee Robinette, Davis's fiancée, testified that on September 27, 2014, a neighborhood barbecue—behind their apartment complex—started around 4 p.m. Robinette stayed in her residence but stated Davis was in and out of the apartment during the barbecue. At one point during the barbecue, Davis came back to their residence to change his shoes.

¶ 24     Around 8 p.m., Robinette "heard a lot of people yelling and screaming, but before that, [she] heard a couple of pops." Robinette went to the door to see what was going on and noticed Davis lying on the concrete.

¶ 25                    5. *Tracy Davis*

¶ 26     Davis, the shooting victim, testified that on September 27, 2014, he did not leave his apartment until shortly before the shooting. Davis testified he was sitting in his apartment when he heard someone walk past his window and make a loud derogatory remark, so he went outside to see who made the remark. Davis indicated defendant made the derogatory remark, but Davis could not remember the exact remark. Once outside, defendant shot him.

¶ 27 Davis denied throwing anything at, striking, or advancing toward defendant. Davis testified White was outside when the shooting occurred.

¶ 28                                        6. *Police Interrogation*

¶ 29 During Detective Mark Pointer's testimony, the State introduced a video recording of Detective Pointer interrogating defendant. Detective Pointer began interrogating defendant shortly before 2 a.m. on September 28, 2014. Initially, defendant told Detective Pointer, "[I]f I ain't got a lawyer present we can kill this *** because we not getting nowhere with this." Detective Pointer then asked defendant to confirm his decision to end the interrogation, but defendant stated that they could continue to speak.

¶ 30 Defendant told Detective Pointer that Davis pushed him, causing defendant to fall. Davis then threw whatever was in his hand, hitting defendant in the face. Next, Davis came at him causing defendant to fear for his life, so he shot Davis. Defendant stated, "I felt my life was in jeopardy."

¶ 31 Defendant initially denied possessing a firearm before going over to the barbecue. However, defendant eventually admitted he "did have that gun and walked over there." Defendant told Detective Pointer he did not recall pulling the trigger.

¶ 32                                        7. *Defendant*

¶ 33 Defendant testified that on the evening of September 27, 2014, he arrived at his apartment after work to find his girlfriend, Ross; her two daughters; and Brown, a friend of Ross's oldest daughter, sitting outside their apartment. Defendant briefly spoke with Ross to confirm their plans to attend a car show in downtown Springfield that evening. Before defendant could enter the apartment to change clothes, he received a text message from a friend, Goins. Goins asked defendant for $10, and defendant testified he agreed to loan Goins the money.

¶ 34	After receiving the text message from Goins, defendant followed Ross across the street to the barbecue. Defendant testified he knew Goins was at the barbecue because Goins told him about it. Once defendant arrived at the barbecue, he said White asked him for money. Defendant declined. Defendant testified he observed alcohol everywhere at the barbecue but he did not consume any alcohol that evening.

¶ 35	Defendant then left the barbecue to go across the street to find Goins. Defendant found Goins in an alley, where he gave him the $10; then the two men walked back to the barbecue. Once they arrived back at the barbecue, Goins set a brown paper bag on a card table near the grill. Defendant testified he was unaware what was in the bag.

¶ 36	Shortly after defendant returned to the barbecue, Davis asked him for $20. Defendant declined. Defendant testified Davis became upset when defendant declined to loan him the money and said, " 'Oh, you will loan [Goins] and [White] some money, but you won't loan me some money. *** That's some bogus ass shit. You bogus he [*sic*] Mother Fucker. You will loan them money, but you won't loan me none.' " Defendant indicated he did not argue with Davis because he knew Davis was "just upset" and "drunk." However, Davis yelled, " 'Let me put my shoes on just in case I have to beat your Mother Fuckin' brains outs [*sic*].' " Defendant testified Davis then went into his residence.

¶ 37	About a minute and a half later, defendant felt a sharp pain on his back where an object hit him. Then, defendant witnessed Davis throw an open can of beer at him, which hit him in the face. Defendant testified Davis knocked him into a card table causing the table to collapse and defendant to fall.

¶ 38	Once defendant fell to the ground, Davis grabbed a dumbbell and rushed toward him. Defendant believed Davis would use the weight to hurt him, so he searched for something

on the ground with which to defend himself. Defendant described picking up a handgun, scrambling to his feet, and discharging the firearm into the air where Davis "walked into the bullet as they were fired."

¶ 39    Defendant fled the scene because he had never been through anything like that, and he was "discombobulated and afraid," while also fearing retaliation by Davis's friends who were at the party. Defendant testified he fled with the firearm for the same reason. Defendant walked to a friend's apartment to decide what to do next. Defendant discarded the gun near a drain. Two hours later, police arrested defendant.

¶ 40    Defendant testified that, during his interrogation with Detective Pointer, he only gave the detective a rough draft of what happened. Defendant did not recall telling the detective he possessed a firearm prior to the incident with Davis. Defendant testified that, during the interrogation, Detective Pointer "twisted [his] arm. *** Almost to the point of trying to force me to say things that wasn't true."

¶ 41                                    8. *Jury Instructions*

¶ 42    During the instruction conference, defense counsel offered jury instructions consistent with self-defense to allow the jury to find defendant's use of force justified. The State objected to the instructions, arguing self-defense was inapplicable because "neither of the offenses charged are premised upon the use of force." Rather, "Armed Habitual Criminal and Unlawful Possession of a Weapon by a Felon [are] premised entirely upon mere possession, in addition to the requisite felonies which have been stipulated to." The State cited *People v. McLennon*, 2011 IL App (2d) 091299, 957 N.E.2d 1241, to the trial court as authority for its argument. Defense counsel argued the reason for defendant's brief possession of the firearm was a question of fact for

the jury. In denying the self-defense instructions, the court found, "[s]elf-defense may not be asserted as an affirmative defense in light of the charging elements of this case."

¶ 43                                    9. *Jury Verdict*

¶ 44          Following deliberations, the jury returned guilty verdicts on being an armed habitual criminal and unlawful possession of a weapon by a felon.

¶ 45          C. Defendant's Sentencing and Motion for a New Trial

¶ 46          On September 5, 2017, the State filed a verified petition for adjudication as a habitual criminal under section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)), where defendant had two prior Class X felony convictions, armed robbery in Cook County case No. 93-CR-0812401 and intent to deliver a controlled substance in Champaign County case No. 98-CF-506.

¶ 47          During a September 7, 2017, sentencing hearing, defense counsel informed the trial court as follows: "Judge, my client desires to reiterate that he believes the statute that you are— that he was found guilty under and that you're ultimately going to sentence him under is unconstitutional, including the charges and the sentencing possibilities that are going to result from that conviction." Ultimately, the trial court granted the verified petition for adjudication as a habitual criminal and sentenced defendant to a term of natural life imprisonment.

¶ 48          On September 13, 2017, defense counsel filed a motion for a new trial, alleging the trial court erred in refusing to give the jury defense counsel's proposed instruction on self-defense. The court denied defendant's motion for a new trial.

¶ 49          This appeal followed.

¶ 50                                    II. ANALYSIS

¶ 51 Defendant appeals, arguing that (1) the trial court erred when it refused to instruct the jury on self-defense where the court mistakenly believed the affirmative defense was unavailable against defendant's charges, and because the error was not harmless beyond a reasonable doubt, the error violated defendant's due process rights; (2) alternatively, he received ineffective assistance of counsel where trial counsel failed to subject the State's case to meaningful adversarial testing by conceding guilt while failing to raise an available necessity defense and, further in the alternative, trial counsel's deficient performance prejudiced defendant by allowing him to admit guilt and leaving the jury no choice but to convict; (3) he is entitled to a new sentencing hearing where using his two prior Class X felonies to both establish an element of the offense of being an armed habitual criminal and to qualify him for a life sentence under the habitual criminal statute constituted improper double enhancement; (4) his life sentence violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution because his sentence rested on a crime he committed as a juvenile and two nonviolent offenses; and (5) he is entitled to a new sentencing hearing where the trial court erroneously used his armed robbery conviction to impose a natural life sentence under section 5-4.5-95(a) of the Unified Code (*id*.) because the conduct underlying that conviction was not classified as a Class X felony at the time of sentencing. We review each issue in turn.

¶ 52                          A. Self-Defense Jury Instruction

¶ 53 Defendant argues the trial court erred in refusing to instruct the jury as to self-defense where the court mistakenly believed the affirmative defense was unavailable against defendant's charges and, because the error was not harmless beyond a reasonable doubt, the error violated defendant's due process rights. The State maintains the trial court did not err in refusing

- 10 -

to instruct the jury on self-defense because self-defense did not apply to the charges faced by defendant.

¶ 54          Before delving further into this issue, we dispose of defendant's argument claiming the trial court's refusal to instruct on self-defense was not harmless beyond a reasonable doubt and, thus, the error violated defendant's due process rights. We find defendant's argument citing *People v. Hari*, 218 Ill. 2d 275, 843 N.E.2d 349 (2006), followed by a conclusory statement asserting a violation of defendant's due process rights, woefully inadequate. Defendant fails to develop his argument. Absent is any analysis or explanation setting forth how defendant's due process rights were violated. "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation] ***." (Internal quotation marks omitted.) *People v. Jacobs*, 405 Ill. App. 3d 210, 218, 939 N.E.2d 64, 72 (2010). Thus, we find this argument forfeited. See *id.* We now return to defendant's assertion the trial court erred when it refused to instruct the jury on self-defense where the court mistakenly believed the affirmative defense was unavailable against defendant's charges.

¶ 55          "An individual may assert self-defense as an affirmative defense to a charge for conduct that might otherwise constitute a crime." *McLennon*, 2011 IL App (2d) 091299, ¶ 14. Self-defense "is an affirmative defense under which a defendant admits to the offense but denies responsibility." *Id.* In order to raise an affirmative defense, a defendant is required to present some evidence on the issue, unless the State's evidence itself raises the defense. *People v. Crowder*, 2018 IL App (1st) 161226, ¶ 23, 127 N.E.3d 711. Self-defense is codified in section 7-1(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/7-1(a) (West 2014)). The elements of self-defense are:

"(1) the defendant was not the aggressor; (2) the danger of harm was a present one; (3) the force threatened must have been unlawful—either criminal or tortious; (4) the defendant must actually have believed that the danger existed, that his use of force was necessary to avert the danger, and that the kind and amount of force which he used was necessary; and (5) the defendant's belief, in each of the aspects described, was reasonable even if it was mistaken." *People v. Everette*, 141 Ill. 2d 147, 158, 565 N.E.2d 1295, 1299 (1990).

¶ 56    A trial court's refusal to give a requested instruction is reviewed under an abuse of discretion standard. *People v. McDonald*, 2016 IL 118882, ¶¶ 32-34, 77 N.E.3d 26; *People v. Sims*, 374 Ill. App. 3d 427, 431, 871 N.E.2d 153, 156 (2007). "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *McDonald*, 2016 IL 118882, ¶ 32.

¶ 57    Here, the State charged defendant with being an armed habitual criminal and unlawful possession of a weapon by a felon. The armed habitual criminal offense requires proof the defendant possessed a firearm after having been convicted of two offenses enumerated in the statute. 720 ILCS 5/24-1.7(a) (West 2014). Similarly, unlawful possession of a weapon by a felon requires proof the defendant knowingly possessed a firearm after being previously convicted of a felony. *Id.* § 24-1.1(a).

¶ 58    Both parties stipulated to defendant's two prior Class X felony convictions for armed robbery in Cook County case No. 93-CR-0812401 and intent to deliver a controlled substance in Champaign County case No. 98-CF-506. Thus, the State only needed to prove possession of a firearm by defendant. At trial, the State introduced a video recording of the police interrogating defendant on the night of the shooting. While defendant initially denied possessing

a firearm before going over to the barbecue on September 27, 2014, he eventually stated he "did have the gun and walked over there."

¶ 59    Defendant argues that, although neither of the underlying offenses charged requires the State to prove defendant used force, the inquiry into the applicability of self-defense does not end with the elements of the offense. The charging instrument does not control whether self-defense is available. See *McLennon*, 2011 IL App (2d) 091299, ¶ 24. Rather, that is determined by the factual analysis of the circumstances surrounding the evidence presented at trial. See *id.* Thus, defendant argues the circumstances underlying his possession of the firearm support the conclusion he acted in self-defense.

¶ 60    In support of his argument, defendant cites *McLennon*, 2011 IL App (2d) 091299, *In re T.W.*, 381 Ill. App. 3d 603, 888 N.E.2d 148 (2008), and *Crowder*, 2018 IL App (1st) 161226. In *McLennon*, 2011 IL App (2d) 091299, ¶ 24, the appellate court found self-defense was applicable to the charge of disorderly conduct where the defendant allegedly used force against another person. However, the trial court did not err in refusing the self-defense instruction as to the disorderly conduct charge given the absence of an imminent threat of harm to the defendant. *Id.* ¶¶ 25-26. In *T.W.*, 381 Ill. App. 3d at 611, this court determined that a defendant charged with disorderly conduct could raise a claim of self-defense because the conduct with which the defendant was charged involved the use of force against another. In *Crowder*, 2018 IL App (1st) 161226, ¶ 29, the appellate court found self-defense is available against weapons possession charges "when an immediate, greater evil threatens a person who initiated no violence and had no other recourse."

¶ 61    Ultimately, the case law cited by defendant confirms that deciding whether self-defense is an available defense is a fact-based inquiry driven by considering not only the charges

but also the specific factual circumstances surrounding the alleged commission of the offenses. Considering the circumstances under which defendant committed the armed habitual criminal offense and unlawful possession of a weapon by a felon, a self-defense instruction would have been inappropriate and confusing. Defendant's commission of the offenses in this case was in no way intertwined with defendant's claimed act of self-defense. In this instance, the State established defendant committed the charged offenses prior to defendant engaging in the altercation with Davis. Stated another way, defendant was not entitled to assert a self-defense claim to possessing a gun, where the circumstances defendant claims entitled him to possess the weapon, in self-defense, occurred after he completed the commission of the offenses charged.

¶ 62       In this instance, we reject defendant's claim the trial court mistakenly believed self-defense was unavailable to the defendant. To the contrary, the trial court ruled based on the charges, the factual circumstances, and the evidence adduced at trial. The parties stipulated to defendant's two prior felony convictions, and the State established mere possession of the firearm by defendant prior to the barbecue. Thus, a self-defense instruction was neither warranted nor required. Therefore, the trial court did not err in refusing to instruct the jury on self-defense.

¶ 63                     B. Ineffective Assistance of Counsel

¶ 64       In the alternative, defendant next argues he received ineffective assistance of counsel where trial counsel failed to subject the State's case to meaningful adversarial testing by conceding guilt while failing to raise an available necessity defense and, further in the alternative, that trial counsel's deficient performance prejudiced defendant by allowing him to admit guilt and leaving the jury no choice but to convict. The State disagrees and argues defense counsel provided effective assistance of counsel.

¶ 65        Generally, claims of ineffective assistance of counsel are subject to the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) prejudice. *People v. Smith*, 195 Ill. 2d 179, 187-88, 745 N.E.2d 1194, 1200 (2000). A defendant must establish both prongs in order to prevail on a claim of ineffective assistance of counsel. *People v. Cherry*, 2016 IL 118728, ¶ 24, 63 N.E.3d 871. However, "prejudice may be presumed where (1) the defendant 'is denied counsel at a critical stage,' (2) counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is called upon to represent a client in circumstances under which no lawyer could prove effective assistance." *Id.* ¶ 25 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). The United States Supreme Court later clarified, "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).

¶ 66        Defendant relies on the second of these instances and argues here that prejudice must be presumed because trial counsel failed to subject the State's case to meaningful adversarial testing where counsel conceded defendant's guilt while failing to raise an available necessity defense. The supreme court in *Cherry* observed this second "*Cronic* exception" is narrow and infrequently applies. *Cherry*, 2016 IL 118728, ¶ 26. A presumption of prejudice is triggered only where counsel's performance falls to such a level as to amount to no representation at all. *Id.*

¶ 67        A review of the record reveals trial counsel did subject the State's case to meaningful adversarial testing while never conceding defendant's guilt and reasonably deciding to forgo a necessity defense. Prior to trial, counsel filed a motion *in limine* seeking to exclude evidence prejudicial to defendant. During trial, defense counsel made an opening statement

stressing the State's burden of proof, asserting the evidence would show the State failed to prove defendant guilty beyond a reasonable doubt. Counsel extensively cross-examined the State's witnesses regarding their description of the events on September 27, 2014. Counsel also made appropriate objections. After his motion for a directed verdict was denied, trial counsel presented defendant's testimony. Defendant testified Davis attacked and knocked him down causing defendant, in order to prevent Davis from attacking him with a dumbbell, to fire into the air with a gun defendant found lying on the ground and, thereafter, Davis walked into the bullet.

¶ 68         During the jury instruction conference, defense counsel requested the jury be instructed on self-defense. The trial court denied the self-defense jury instruction. Thereafter, defense counsel made a closing argument noting the evidence corroborated defendant's version of the events and concluding, "the State has failed in proving my client guilty beyond a reasonable doubt."

¶ 69         At no time did defense counsel concede or admit defendant's guilt. Instead, counsel actively challenged the State's case and presented the theory defendant was justified in the possession of the firearm. The mere fact that the trial court ruled against trial counsel on the self-defense instruction cannot render his performance ineffective.

¶ 70         In this instance, we find *People v. Bloomingburg*, 346 Ill. App. 3d 308, 804 N.E.2d 638 (2004), instructive. In *Bloomingburg*, 346 Ill. App. 3d at 316, 318, the defendant argued ineffective assistance of counsel under *Cronic* where counsel completely and unequivocally conceded the defendant's guilt in his opening statement and then presented a defense, self-defense, that was unavailable to the defendant because the defendant was the aggressor and not in imminent danger of great bodily harm. The appellate court concluded that the presumption of prejudice could not apply where counsel (1) made pretrial motions to suppress evidence, (2) advanced a defense

theory, (3) cross-examined most of the State's witnesses, (4) objected to adverse evidence, and (5) made a closing argument that defendant should not be convicted of first degree murder. *Id.* at 318. The court found counsel had not entirely failed to subject the State's case to meaningful adversarial testing since counsel had not conceded every significant aspect of the defendant's guilt and made an effort to hold the State to its burden of proof. *Id.* As in *Bloomingburg*, we decline to presume prejudice in this matter.

¶ 71     Under circumstances where we decline to presume prejudice, we consider defendant's ineffective assistance of counsel claim under *Strickland*, where the defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) prejudice. See *Smith*, 195 Ill. 2d at 187-88. Under *Strickland*, "[w]e must show great deference to the attorney's decisions as there is a strong presumption that an attorney has acted adequately." *People v. Moore*, 2012 IL App (1st) 100857, ¶ 43, 964 N.E.2d 1276. A defendant must overcome the strong presumption the challenged action or inaction " 'might have been the product of sound trial strategy.' " *Id.* (quoting *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). "Trial strategies are unsound only when no reasonably effective criminal defense attorney, facing similar circumstances, would pursue such strategies." *People v. Faulkner*, 292 Ill. App. 3d 391, 394, 686 N.E.2d 379, 382 (1997).

¶ 72     Specifically, defendant argues trial counsel should have pursued a necessity defense where defendant found a loaded firearm lying on the ground and used it to prevent Davis from attacking him with a dumbbell. However, defense counsel sought to present the defense of self-defense based on the same evidence. In fact, defendant's necessity claim is based on the same testimony that failed to warrant a self-defense instruction. Defendant admitted to police he possessed the firearm prior to the barbecue. Thus, trial counsel would have faced the same

obstacles that prevented defendant from receiving a self-defense instruction. The decision on which defense to pursue is a matter of trial strategy, and we decline to find defense counsel's actions, in pursuing self-defense and not a necessity defense, constitute ineffective assistance of counsel. See *id*. Defendant fails to overcome the presumption that the decision to proceed on self-defense was not reasonable or that defense counsel was ineffective for not requesting a necessity instruction instead of, or in addition to, a self-defense instruction. Given that defendant fails to show trial counsel's performance fell below an objective standard of reasonableness, his ineffective assistance of counsel claim fails.

¶ 73                                C. Double Enhancement

¶ 74        Defendant next argues he is entitled to a new sentencing hearing where his life sentence stems from improper double enhancement. Specifically, defendant argues he is entitled to a new sentencing hearing where using his two prior Class X felony convictions to both establish an element of the offense of being an armed habitual criminal and to qualify him for a life sentence under the habitual criminal statute constituted improper double enhancement. See 730 ILCS 5/5-4.5-95(a) (West 2014). The State argues defendant's sentence was proper and further asserts defendant forfeited this issue where he failed to object at sentencing or raise the issue of improper double enhancement in a posttrial motion.

¶ 75        Defendant failed to raise this issue before the trial court, rendering the issue forfeited. *People v. Kitch*, 239 Ill. 2d 452, 460, 942 N.E.2d 1235, 1240 (2011). However, we may consider a forfeited claim where the defendant demonstrates a plain error occurred. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). To prevail under the plain-error doctrine, a defendant must first demonstrate a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007). "To determine whether error exists, each case must be decided on its own

- 18 -

facts." *People v. Rushing*, 192 Ill. App. 3d 444, 454, 548 N.E.2d 788, 794 (1989). If an error occurred, we will only reverse where (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. We first examine whether a clear or obvious error occurred.

¶ 76    "[A] single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' " *People v. Phelps*, 211 Ill. 2d 1, 11-12, 809 N.E.2d 1214, 1220 (2004) (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84, 600 N.E.2d 1189, 1191 (1992). Such dual use of a single factor is referred to as a "double enhancement." *Id.* at 12. "The prohibition against double enhancement is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Id.* An exception to this general rule arises where "the legislature clearly intends to enhance the penalty based upon some aspect of the crime and that intention is clearly expressed." *People v. Powell*, 2012 IL App (1st) 102363, ¶ 8, 970 N.E.2d 539. The double enhancement rule is one of statutory construction; therefore, our review is *de novo*. *Phelps*, 211 Ill. 2d at 12.

¶ 77    Here, the parties stipulated to defendant's two prior Class X felony convictions for armed robbery in Cook County case No. 93-CR-0812401 and intent to deliver a controlled substance in Champaign County case No. 98-CF-506. Following deliberations, the jury found defendant guilty of (1) being an armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7(a) (West 2014)) and (2) unlawful possession of a weapon by a felon, a Class 2 felony (*id*. § 24-1.1(a), (e)). Subsequently, the State filed a verified petition for adjudication as a habitual criminal under

section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)), where defendant had two prior Class X felony convictions for armed robbery in Cook County case No. 93-CR-0812401 and intent to deliver a controlled substance in Champaign County case No. 98-CF-506.

¶ 78　　　　The essential elements of the armed habitual criminal offense, a Class X felony, are (1) possession of a firearm and (2) two prior convictions for offenses enumerated in the statute. 720 ILCS 5/24-1.7(a) (West 2014). Class X felonies are punishable by 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2014). However, under the general recidivism statute, a defendant with three separate Class X felony convictions within 20 years, excluding time in custody, is subject to a natural life sentence. *Id*. § 5-4.5-95(a).

¶ 79　　　　Defendant argues that, where his two prior Class X felony convictions were used to establish an element of the armed habitual criminal offense (720 ILCS 5/24-1.7(a) (West 2014)), those same two convictions were improperly used to adjudicate him a habitual criminal under section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)). In support of his argument, defendant cites *People v. Owens*, 377 Ill. App. 3d 302, 878 N.E.2d 1189 (2007), and *People v. Bahena*, 296 Ill. App. 3d 67, 693 N.E.2d 1279 (1998).

¶ 80　　　　In *Owens*, 377 Ill. App. 3d at 305, the appellate court held the trial judge's reliance on a prior conviction to satisfy the elements of an aggravated unlawful use of a weapon charge and to enhance the punishment for that charge constituted impermissible double enhancement. In *Bahena*, 296 Ill. App. 3d at 70, the appellate court found an improper double enhancement occurred where the same prior felony was used to establish the substantive offense of unlawful possession of a weapon by a felon and to impose an extended-term sentence.

¶ 81　　　　Under section 24-1.7(a) of the Criminal Code (720 ILCS 5/24-1.7(a) (West 2014)), defendant was convicted of the Class X armed habitual criminal offense based upon his possession

of a firearm after twice being convicted of enumerated offenses. Under section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)), defendant received a natural life sentence because this was his third Class X felony conviction. Defendant's two prior Class X felonies were used as an element of his armed habitual criminal charge and then used again to impose a harsher sentence than might otherwise have been imposed. Being an armed habitual criminal is a Class X felony carrying a maximum sentence of 30 years. However, due to those same two prior Class X felonies, defendant was subject to a harsher penalty—natural life in prison.

¶ 82       Although we find defendant was subject to a double enhancement, we conclude this case represents an instance where "the legislature clearly intends to enhance the penalty based upon some aspect of the crime and that intention is clearly expressed." *Powell*, 2012 IL App (1st) 102363, ¶ 8. Specifically, based on the language of the respective statutes, the legislature clearly expressed its intention that defendant's prior two Class X felony offenses be used as elements of the armed habitual criminal offense under section 24-1.7(a) of the Criminal Code (720 ILCS 5/24-1.7(a) (West 2014)) and to sentence defendant to natural life imprisonment as a habitual criminal under section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)). See *Powell*, 2012 IL App (1st) 102363, ¶ 8; see also *People v. Dycus*, 291 Ill. App. 3d 14, 17, 683 N.E.2d 200, 202 (1997).

¶ 83       Under section 24-1.7(a) of the Criminal Code (720 ILCS 5/24-1.7(a) (West 2014)), defendant is guilty of the Class X felony of armed habitual criminal based on his possession of a firearm after twice being convicted of enumerated offenses. Under section 5-4.5-95(a)(5) of the Unified Code (730 ILCS 5/5-4.5-95(a)(5) (West 2014)), defendant "shall be sentenced to a term of natural life imprisonment" where this was his third Class X felony conviction. The statutory language reflects a legislative decision to mandate a natural life sentence for third-time repeat

Class X offenders. This makes sense given the reasonable goals of protecting society and recognizing third-time repeat offenders' demonstrated unwillingness to comply with societal expectations, refrain from engaging in serious criminal activity, and seek rehabilitation. In light of this unequivocal legislative directive, the trial court properly employed a double enhancement when imposing its sentence in this matter. Thus, the trial court did not err. As no clear or obvious error occurred, defendant fails to establish plain error. See *Piatkowski*, 225 Ill. 2d at 565. Therefore, defendant is not entitled to a new sentencing hearing.

¶ 84                              D. Constitutionality of Life Sentence

¶ 85        Next, defendant argues his life sentence under section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)), as applied to him, violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution because his sentence rested on a crime he committed as a juvenile and two nonviolent offenses. The State maintains defendant's natural life sentence is proper.

¶ 86        Defendant failed to raise this issue in a posttrial motion, rendering the issue forfeited. *Kitch*, 239 Ill. 2d at 460. However, as stated above, we may consider a forfeited claim where the defendant demonstrates a plain error occurred. Ill. S. Ct. R. 615(a) (eff. Jan 1, 1967). Thus, we first examine whether a clear or obvious error occurred. See *Piatkowski*, 225 Ill. 2d at 565.

¶ 87        "The [e]ighth [a]mendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)); U.S. Const., amend. VIII. Similarly, the Illinois Constitution requires penalties be determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful

citizenship." Ill. Const. 1970, art. I, § 11. A sentencing statute may be deemed unconstitutionally disproportionate, as applied to a specific defendant, when "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338, 781 N.E.2d 300, 307 (2002) (*Leon Miller*). Whether a sentence is constitutional is a question of law we review *de novo*. *People v. Lawson*, 2015 IL App (1st) 120751, ¶ 45, 29 N.E.3d 464.

¶ 88    In support of his argument, defendant urges this court to avoid what he calls a strict application of the Habitual Criminal Act. Moreover, defendant encourages us to recognize the Habitual Criminal Act conflicts with our evolving standards of decency. In opposition, the State mounts a convincing argument suggesting defendant's current position was soundly rejected in *Lawson*, 2015 IL App (1st) 120751. Moreover, the State asserts *Lawson* is not undercut by *People v. Reyes*, 2016 IL 119271, 63 N.E.3d 884, *People v. Holman*, 2017 IL 120655, 91 N.E.3d 849, and *People v. Buffer*, 2019 IL 122327, 137 N.E.3d 763.

¶ 89    In response to the State's argument that *Reyes*, *Holman*, and *Buffer* fail to undercut *Lawson*, defendant indicates he relies on those cases only to illustrate how our understanding of juvenile culpability has expanded since *Lawson*.

¶ 90    As pointed out by the State, the aforementioned cases all involve challenges to sentences imposed on defendants who committed the crimes in question as a juvenile. Obviously, similar facts do not exist here because one who commits an offense at age 42 is not entitled to protections afforded a juvenile offender. We also note that, although *People v. Harris* did leave room for an as applied eighth amendment challenge, *Harris* is of no benefit to defendant because once again unlike the offender in *Harris*, who committed the relevant offense at the age of 18, defendant was 42 years of age when he committed the offense that made him eligible for a natural

life sentence. *People v. Harris*, 2018 IL 121932, ¶ 45, 120 N.E.3d 900. At no point did the *Harris* court suggest the type of looking back defendant seeks here.

¶ 91 Thus, we find *Lawson* controlling. There, on appeal, defendant challenged the trial court's lack of consideration of his youthfulness at the time of the qualifying offense in addition to the absence of a determination as to his rehabilitative capacity. *Lawson*, 2015 IL App (1st) 120751, ¶¶ 44, 47. Ultimately, in *Lawson* the appellate court rejected the defendant's federal and state constitution claims where the defendant was sentenced to life imprisonment for committing, well into adulthood, a third Class X felony. *Id.* ¶ 50. We follow *Lawson* and find no state or federal constitution violation.

¶ 92 Plainly, in this instance, consideration of defendant's youthfulness and a determination as to his rehabilitative capacity was not required. To suggest otherwise twists juvenile jurisprudence while ignoring the plain language and purpose of the Habitual Criminal Act. Here, defendant received his natural life sentence not for a crime he committed as a juvenile but as the result of conduct in which he engaged well into adulthood. Undeniably, defendant committed and was sentenced for a new offense wholly separate from the crime he committed as a juvenile.

¶ 93 Under the Habitual Criminal Act, every person twice convicted of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, and who is thereafter convicted, within the defined 20 year time period, of a Class X felony, shall be adjudged a habitual criminal and sentenced to a term of natural life imprisonment. 730 ILCS 5/5-4.5-95(a) (West 2014). Constitutionally sound is the statutory directive allowing invocation of the Habitual Criminal Act once a defendant, on a third occasion, makes plain his complete refusal to refrain from engaging in serious criminal activity. Here, defendant's sentence was imposed after he

squandered multiple opportunities to self-correct and instead chose to continue committing serious crimes. Under such circumstances, we decline to find defendant's sentence "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Leon Miller*, 202 Ill. 2d at 338.

¶ 94    As to defendant's suggestion we consider the fact his natural life sentence also rested on two nonviolent offenses, we find this argument meritless. Absent is any statutory language or constitutional mandate directing the sentencing court to, under these circumstances, consider whether or not the offenses at issue involved violence. To the contrary, the inquiry is limited to whether or not defendant is a third time repeat Class X offender. Defendant was convicted of three Class X felony convictions within 20 years. Specifically, defendant was convicted of (1) armed robbery in Cook County case No. 93-CR-0812401 in 1993, (2) intent to deliver a controlled substance in Champaign County case No. 98-CF-506 in 1998, and (3) being an armed habitual criminal in 2017. Thus, defendant's record and the relevant statutory authority mandated the trial court impose a natural life sentence. In sentencing defendant to natural life, the trial court committed no error, constitutional or otherwise. Hence, defendant's plain error claim fails.

¶ 95                         E. Prior Armed Robbery Conviction

¶ 96    Defendant next argues he is entitled to a new sentencing hearing where the trial court used his prior armed robbery conviction to impose a natural life sentence under section 5-4.5-95(a) of the Unified Code (730 ILCS 5/5-4.5-95(a) (West 2014)) because the conduct underlying that conviction was not classified as a Class X felony at the time of sentencing. When the question before us requires statutory construction, we employ *de novo* review. *People v. Brace*, 2017 IL App (4th) 150388, ¶ 11, 79 N.E.3d 765.

- 25 -

¶ 97    Defendant was convicted of three Class X felony convictions within 20 years. Specifically, defendant was convicted of (1) armed robbery in Cook County case No. 93-CR-0812401 in 1993, (2) intent to deliver a controlled substance in Champaign County case No. 98-CF-506 in 1998, and (3) being an armed habitual criminal in 2017. Defendant committed the offense of armed robbery in Cook County case No. 93-CR-0812401 while 17 years old.

¶ 98    During trial court proceedings on the armed habitual criminal charge, the legislature amended section 5-130 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-130 (West 2016)). As a result, armed robbery committed by a minor who was at least 16 years of age at the time of the offense was no longer automatically transferred to criminal court. See Pub. Act 99-0258 (eff. Jan. 1, 2016). Rather, a juvenile charged with armed robbery is subject to discretionary transfer pursuant to section 5-805 of the Juvenile Court Act (705 ILCS 405/5-805 (West 2016)).

¶ 99    Accordingly, defendant argues that, when the trial court sentenced him to life in prison as a habitual offender, the conduct underlying his 1993 armed robbery—committed when he was 17 years old—was no longer classified as a Class X felony.

¶ 100    Defendant cites *People v. Miles*, 2020 IL App (1st) 180736, in support of his argument. In *Miles*, the defendant committed the offense of burglary, a Class 2 felony. *Id.* ¶ 2. At sentencing, the trial court sentenced the defendant as a Class X offender based on two prior felony convictions. *Id.* ¶ 3. The defendant challenged his sentence on appeal, arguing his 2006 conviction for aggravated vehicular hijacking with a firearm and armed robbery—committed when he was 15, was not a qualifying prior conviction under section 5-4.5-95(b) of the Unified Code (730 ILCS 5/5-4.5-95(b) (West 2016)). *Miles*, 2020 IL App (1st) 180736, ¶¶ 3, 6.

¶ 101    The *Miles* court found the defendant's argument "hinges on the legislature's 2016 amendment to section 5-130 of the Juvenile Court Act, which had the effect of vesting the juvenile court with exclusive jurisdiction over minors who are charged with armed robbery or aggravated vehicular hijacking—two crimes that had, prior to the amendment, disqualified minors from juvenile jurisdiction." *Id.* ¶ 21. "Had defendant committed his 2005 offense under the laws in effect on June 9, 2016, the juvenile court would have had exclusive jurisdiction. [Citation.] The offense would have led to a juvenile adjudication rather than a Class 2 felony conviction." *Id.* ¶ 22. Thus, the appellate court vacated the defendant's Class X sentence and remanded to the trial court for resentencing within the authorized sentencing range for a Class 2 felony. *Id.* ¶ 23.

¶ 102    Recently, this court declined to follow *Miles*. See *People v. Reed*, 2020 IL App (4th) 180533. In *Reed*, we affirmed where the trial court used the defendant's prior burglary conviction—committed when defendant was 17—as one of two prior convictions used to impose mandatory Class X sentencing. *Id.* ¶ 29. We find the reasoning in *Reed* applicable to this case. Here, as in *Reed*, even with the amendment to the Juvenile Court Act, a 17-year-old who commits armed robbery still faces possible discretionary transfer to adult court. 705 ILCS 405/5-805(3)(a) (West 2014). We are unwilling to take it as a given that, under the amendment, defendant's prior case would have remained in juvenile court. Even if we did take it as a given that defendant's prior case would have remained in juvenile court, we are unprepared to say defendant would not have a conviction. Absent is any language in section 5-4.5-95(a) of the Unified Code suggesting an individual under 18 convicted of a criminal offense receives an adjudication versus a conviction. 730 ILCS 5/5-4.5-95(a) (West 2014).

¶ 103    Most importantly, we find the interpretation of the requirements of section 5-4.5-95(b) outlined in *Reed* spot on in this case. As in section 5-4.5-95(b), section 5-4.5-95(a)(1) of the

- 27 -

Code (730 ILCS 5/5-4.5-95(a)(1) (West 2014)), "only requires the trial court to look at the elements of defendant's prior offense and determine whether an offense with the same elements, classified as a Class X felony, existed when the present offense was committed." *Reed*, 2020 IL App (4th) 180533, ¶ 26. Here, defendant's prior conviction was for armed robbery. Similar to the defendant in *Reed*, defendant fails to argue any change in the statutory elements of his prior offense or a change in its classification. As in *Reed*, we find defendant's age irrelevant. There did exist, at the time defendant committed his third Class X felony, an offense with the same elements as his prior offense, classified as a Class X felony. Accepting defendant's position would read into section 5-4.5-95(a)(1) the requirement that the trial court consider a defendant's age at the time of the commission of the prior offense and then refrain from considering the prior offense a conviction in spite of the prior offense still being on the books as a Class X felony. It is well settled that "[t]he language of a statute, given its plain and ordinary meaning, is the best indicator of the legislature's intent, and where the language is plain and unambiguous, it must be applied as written." *Id.* Therefore, the trial court did not err when it imposed a natural life sentence for defendant's armed habitual criminal offense based, in part, on his 1993 armed robbery conviction.

¶ 104                                III. CONCLUSION

¶ 105          For the foregoing reasons, we affirm the trial court's judgment.

¶ 106          Affirmed.

**No. 4-17-0682**

| | |
|---|---|
| **Cite as:** | *People v. O'Neal*, 2021 IL App (4th) 170682 |
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 14-CF-1059; the Hon. Peter C. Cavanagh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Jerry A. Jefferson, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Daniel K. Wright, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |